Winslow *v.* McCall.

WINSLOW *vs.* McCALL and CARLEY.

The assignee of a junior mortgage, whose assignment is recorded, is entitled to notice, upon the foreclosure by advertisement of a senior mortgage.

If no notice is served upon him he will not be foreclosed; nor will his rights under his mortgage be affected by the foreclosure and sale.

Where the owner of premises which are subject to a mortgage, while in possession thereof, takes an assignment of the mortgage, which is subsequently forfeited by the non-payment of the amount due thereon, he will, from the time of such forfeiture, be deemed a mortgagee in possession, and may defend the possession until his debt is paid.

It is not necessary that he should have obtained possession as mortgagee, either by consent of the mortgagor, or by legal proceedings. It is sufficient if he obtained the possession in some legal mode.

A grantee will not be prejudiced in his claim under a covenant of warranty, by a failure to take the actual possession of the premises immediately. He has the right to leave them vacant, if he chooses; and the fact that he might, by taking immediate possession, have prevented a mortgagee from becoming mortgagee in possession until the grantee should resort to legal proceedings, will not affect the right of the latter under the covenant.

If the right of a mortgagee in possession exists at the time of the conveyance of the premises to a purchaser, in fee, and such mortgagee can, by virtue of that right, now resist the claim of the grantee to the possession, and does in fact resist such claim, the covenant of warranty is broken, and an action can be maintained thereon.

A subsequent incumbrancer has no claim upon the surplus moneys arising from a sale under a statute foreclosure of which he has no notice ; his lien not being affected by the proceedings. The land, therefore, will not be discharged from the lien of his incumbrance and transferred to such surplus moneys.

Where the plaintiff purchased of the defendants a piece of land for $1400, paying $500 down, and giving her bond and mortgage for $900 ; *Held,* in an action for breach of the covenant of warranty and quiet enjoyment con-

tained in the deed, by reason of the existence of a prior mortgage upon the premises, under which the mortgagee was in possession, that the measure of damages was the amount due upon the mortgage last mentioned, with interest from the commencement of the suit.

ON the 26th day of February, 1859, the defendants conveyed to the plaintiff about seventy acres of land, part of lot No. 62, in the town of Marathon, in the county of Cortland. The consideration for the sale was $1400. Of this the plaintiff paid down $400 in money, and delivered to the defendants the note of her husband for $100, and the balance was secured by her bond and mortgage on the premises for $900, payable in installments. The deed contained the usual covenants for quiet enjoyment and warranty. At the time this conveyance was made, one Hervey J. Pike was in possession of the premises as a tenant under *Richard D. Cornwell.* His possession *as such tenant* commenced on the 14th day of May, 1857, and has continued since that time. Cornwell derived title to the premises on the 16th day of February, 1857, by conveyance from Jacob L. Talbut, whose title by several mesne conveyances came from *John Houghtailing.* In addition to this, Cornwell, on the 9th day of March, 1859, became the assignee of a mortgage on the premises, and which was a valid lien thereon, for the sum of one hundred dollars then remaining due, and the interest thereon from the first day of April, 1858. This mortgage was given by Philip Heartt, jun., (a former owner of the premises) to Henry W. Burlingame, on the 21st day of March, 1853, to secure the payment of $500, and was recorded on the 21st day of April, 1853, in Cortland county. On the 11th day of April, 1854, Burlingame assigned this mortgage to Hiram W. Betts, and on the same day this assignment was recorded in the clerk's office of the same county. On the 9th day of March, 1859, Betts assigned the mortgage to Richard D. Cornwell, and the assignment was duly recorded on the 11th day of March, 1859. The defendants de-

rived their title to the premises through the foreclosure of a mortgage thereon, executed by Asahel R. Cannon and Bathsheba his wife, to John Houghtailing, dated the 29th day of March, 1849, and given to secure the payment of $1000, and duly recorded on the 11th day of December, 1849. On the 8th day of August, 1854, John D. Cannon became the owner of this mortgage. On the 15th day of July, 1858, he commenced proceedings to foreclose this mortgage, by advertisement, under the statute. The sale took place on the 12th day of October, 1858, and the premises were bid off by Hiram McCall, one of the defendants. No notice of this foreclosure was served on Hiram W. Betts, or on Hervey J. Pike, or on the personal representatives of Bathsheba Cannon. About the first of April, 1859, Winslow, the husband of the plaintiff, demanded possession of the premises of the defendants. On the 6th day of April, 1859, a written request from the plaintiff was made of the person in possession (Hervey J. Pike) that he remove therefrom; and likewise demanding possession thereof, by virtue of the conveyance to her. Pike refused to leave the premises, on the ground that he was in possession, as a tenant under Richard D. Cornwell. Pike as such tenant still keeps the plaintiff out of possession.

This action was brought by the plaintiff, against the defendants, upon the covenant of warranty and quiet enjoyment contained in their deed of February 26, 1859. The plaintiff claimed to recover the sum of $500, being the amount of purchase money paid by her at the time of the purchase, with interest.

*H. Ballard,* for the plaintiff.

*McDowell, Stilson & Edwards,* for the defendants.

PARKER, J. The principal question in this case is whether the foreclosure of the mortgage by Cannon barred the assignee of the Heartt mortgage, and this I find a difficult

question. It was decided by Justice Hand, at special term, in *Wetmore* v. *Roberts,* (10 *How. Pr. R.* 51,) that an assignee of a junior mortgage, whose assignment was recorded, was entitled to notice, upon the foreclosure by advertisement of a senior mortgage. That is this case; and inasmuch as, aside from authority, the question is one of much doubt, I feel bound by that decision, not finding any which conflicts with it.

If then Betts, who was an assignee of the Heartt mortgage, was entitled to notice on the foreclosure of the Cannon mortgage, no notice having been served on him, he was not foreclosed, and his rights under his mortgage were not affected by the foreclosure and sale. He stood after the foreclosure precisely as though none had been made.

At the time of the foreclosure and sale, Pike was in possession; and was in, as I think, as the tenant of Cornwell. He entered under the lease from Cornwell, the term in which continued until the 1st of April, 1858. Cornwell was then the owner of the premises, subject to the mortgages, and so continued until the sale under the foreclosure proceedings, on the 12th day of October, 1858, to the defendant McCall. Now although a memorandum was subjoined to the lease on the 10th day of March, 1858, signed and sealed by R. D. and W. P. Randall, and the lessee Pike, as follows: " We, the undersigned, hereby mutually agree that the above lease may stand for one year from the first day of April next, and that for value received, we promise and agree, each to the other, to be governed in all respects by said lease for the term above specified;" still there is nothing to show that the Randalls had or claimed any interest in the premises, and no such interest or claim can be inferred from the terms of the memorandum, but the inference rather is, that they stipulated on behalf of Cornwell, as his sureties, or possibly as his agents. The agreement is, that *the lease* shall stand for another year. Pike does not agree to pay any rent to the Randalls, but to Cornwell. The next succeeding year a similar extension is

signed by Cornwell himself. Pike, moreover, testifies that he has continued in possession ever since he first entered as tenant to Cornwell. I therefore hold that Pike, at the time of the foreclosure and sale, and at the time of the conveyance by the defendants to the plaintiff, and ever since, was and has been Cornwell's tenant. Cornwell has never been divested of the possession of the premises since his first entry under his deed from Talbut. Cornwell's interest in the premises, however, was subject to the Cannon mortgage ; and on the foreclosure of that mortgage he was served with notice, and his equity of redemption was foreclosed against, and his interest divested. The possession which he thenceforth retained through Pike, his tenant, was not adverse as against the defendants, or the plaintiff, claiming under the Cannon mortgage, until he became the assignee of the Heartt mortgage. Pike's possession, therefore, was not adverse at the time the defendants conveyed to the plaintiff. The defendants' counsel insist that, inasmuch as the plaintiff, in her complaint, alleges that Pike was in possession under Cornwell, who was the owner of the premises and claimed title thereto, adversely to the defendants, at the time the defendants executed the deed to the plaintiff, she cannot gainsay the fact. But the defendants deny that fact, distinctly, as the plaintiff alleges it; and an issue being made upon it, neither party can rest upon the allegation of the other, but the issue must be decided according to the facts appearing in the case.

On the 9th of March, 1859, Cornwell became the owner of the Heartt mortgage, with all the rights of Betts under it. On the 1st of April, 1859, that mortgage became forfeited by the non-payment of the amount remaining unpaid and which then became due, to wit, $100 and interest thereon from 1st April, 1858. Cornwell was then in possession—a possession legally acquired, and of which he had never been divested. I think he is from that time to be deemed a mortgagee in possession. It is not necessary that he should have obtained possession, as mortgagee, either by consent of the

mortgagor, or by legal proceedings. It is sufficient if he obtained the possession in some legal mode. After forfeiture, he is considered as having the legal estate, and being legally in possession, may defend until his debt is paid. (15 *Wend.* 248.) Cornwell, then, as against the plaintiff, has a right of possession, paramount to her's. It matters not that the paramount right, in the condition in which it now exists, did not accrue until after the execution of the conveyance by the defendants to the plaintiff. She cannot be prejudiced, in her claim under the covenant of warranty entered into by the defendants with her, by not having immediately taken the actual possession of the premises. She had the undoubted right to leave them vacant if she chose; and the fact that she might, by taking immediate possession, have prevented this mortgagee from becoming mortgagee in possession, until he should resort to legal proceedings, does not affect her right under the covenant. That would only have driven him to redeem the premises from the sale under the foreclosure proceedings, and thus to have ousted her of the possession. His right against that conveyed to her, existed in the hands of Betts at the time of the conveyance to her; and if he can, by virtue of that right, now resist her claim to the possession, and does in fact so resist, the covenant of warranty is broken, and this action can be maintained. (6 *Barb.* 172.)

It is contended by the defendants' counsel that the lien of the Heartt mortgage is transferred from the premises to the surplus remaining in the hands of Cannon, from the foreclosure and sale under the mortgage held by him, and such surplus being sufficient to satisfy the Heartt mortgage, that Cornwell has no right to the possession of the premises under that mortgage.

The case of *Slee* v. *Manhattan Company*, (1 *Paige*, 48,) cited to sustain that position, does not, I think, sustain it. There, Slee owed the Manhattan Company $2000; and, holding a mortgage against Frear & Hallowell for $4000, he assigned it to the company as collateral security for the pay-

Winslow v. McCall.

ment of the $2000.   The company foreclosed the mortgage, and bid in the premises for $700.   And all that was held in that case upon the point now in question was, that the assignment authorized the assignee to foreclose the mortgage assigned; that if a stranger had purchased under the foreclosure, he would have taken a good title against the mortgagee who had assigned; that the foreclosure of the mortgage did not affect the right of the mortgagee in that mortgage, who had assigned it, to redeem his mortgage, his assignment being in the nature of a mortgage; but that his equity of redemption would, after the foreclosure of the mortgage so assigned, and a purchase of the premises by a stranger, attach itself to the money for which the land was sold, instead of the land itself.   It was held in *Waller* v. *Harris*, (7 *Paige*, 167,) that a subsequent incumbrancer has no claim to the surplus produced by a sale in a statute foreclosure, as his lien is not affected by the proceeding.   The latter case, and not the former, states the rule applicable to the case under consideration.

Upon the whole case, I do not see why the plaintiff is not entitled to recover.

In regard to the damages, no question was made, on the trial, nor in the briefs submitted, as to the rule.   The plaintiff claims to recover back the $500 of the purchase money paid by her at the time of the conveyance, but makes no claim in regard to the $900 bond and mortgage which she at the same time executed to the defendants.   On what principle she assumes $500, as the measure of damages, I do not quite understand.   The title which she has obtained by the conveyance to her, is good against all the world, except this mortgagee in possession, and he is entitled to hold possession only until his debt shall be paid, by the rents and profits of the premises, or otherwise.   When the debt is paid in that way or any other, the obstruction to her possession ceases, and her title is complete and unincumbered, except by the mortgage which she, herself, gave to the defendants.   If the

entire title had failed, or if the amount due on the mortgage equalled the value of the land, then the purchase money and interest would have been the measure; and the $1400 would have been recoverable, less the $900, indeed, if the claim to such deduction were properly set up in the answer. But here the title has not failed absolutely; nor is the amount of the mortgage equal to the value of the land, evidenced by the consideration in the deed.

In *White* v. *Whitney*, (3 *Metc. R.* 81,) it was held that when land, that is subject to a mortgage, is conveyed with a covenant of warranty, and the grantee is ousted by the mortgagee, the rule of damages upon a suit on the covenant, is the value of the estate at the time of the ouster, unless that value exceeds the amount due on the mortgage; but if it it exceed that amount, then that amount is the measure of damages. Chief Justice Shaw says, in giving the opinion of the court in that case, "If the right of redemption is not foreclosed, and the land may be redeemed for less than its value, the amount to be paid for such redemption—the amount due on the mortgage—will be the measure of damages, because it will afford the plaintiff complete indemnity. Cases may be supposed where the outstanding mortgage, though assuming the form of a paramount title, which, if not redeemed, would take the whole estate, and evict the covenantor; yet, being very small in amount in comparison with the value of the estate, it would be plainly for the interest of the owner and holder of the equity of redemption to redeem. In such a case it would be quite unreasonable to hold that the covenantee, on such an eviction, should recover damages to the full value of the estate." In *Donahoe* v. *Emerey*, (9 *Metc. R.* 63,) it was held that when a grantee, who is evicted by the holder of a mortgage, made prior to his grant, sues his grantor on his covenant for quiet enjoyment, he is not entitled to recover damages beyond the amount of the mortgage debt, if the mortgage be not foreclosed.

Justice Wilde says, " The rule laid down was adopted in

*Tufts* v. *Adams*, (8 *Pick*. 550,) and confirmed in *White* v. *Whitney*, (3 *Metc*. 81,) and it seems founded on a principle of reciprocal justice. The plaintiff is entitled to indemnity, no more, and to compel the defendants to pay the full value of the estate, would be unjust if it exceeded the amount of incumbrance." The same principle has been held in this state. In *Guthrie* v. *Kingsley*, (12 *John*. 126,) the defendants had conveyed in fee, to the plaintiff, with covenant of seisin; they, in fact, had only a life estate in four-sixths of the premises, and an estate in fee in two-sixths, and no more passed to the plaintiff by their conveyance. In an action on the covenant it was held, that as to two-sixths there was no failure of title, but as to the residue, as the conveyance carried to the plaintiff a life estate, his damages were four-sixths of the consideration money, deducting therefrom the value of the life estate. The principle is recognized also in *Wager* v. *Schuyler*, (1 *Wend*. 553,) and in *Rickert* v. *Snyder*, (9 *id*. 423.) In the latter case, the plaintiff, to whom the defendant had conveyed in fee, with covenant of warranty, was ousted from the possession by the holder of a term for years, and in an action on the covenant was allowed, at the circuit, to recover the whole value of the land, with interest. The court, on a motion for a new trial, say : " The plaintiff was permitted to recover the whole value of the land. This was wrong. The record did not show that Kline was seised of the premises, which he recovered, but on the contrary, that he was *possessed* of a term. The extent of that term, and the annual value, or the interest of the purchase money, should have been the measure of damages." According to the principle of the cases above cited, the plaintiff is entitled to recover such sum as will afford her a complete indemnity, for the breach of the covenant, and that is held to be the amount due on the mortgage, which, at the commencement of this suit, was $107.29. That amount she was then entitled to from the defendants, and she is now entitled to interest on that sum from the commencement of the suit to the date of

the referee's report; the sum which she is entitled to recover being, in the aggregate, $117.63. This fully indemnifies the plaintiff for the breach of the covenants; for Cornwell, the mortgagee in possession, is to account to her for the rents and profits of the premises, and these, as between them, go to satisfy, or lessen the amount due on the mortgage, to the extent of their value.

As no question was made by the defendants, on the trial, in regard to the amount claimed by the plaintiff, so that they might, perhaps, be deemed to assent to her right to recover that amount, if entitled to recover at all, I should not have started that question, did I not find myself confronted with it, and were it not one, a wrong decision of which would be cause for a reversal of the judgment, as it would be entirely competent for the defendants to except to the report of the referee for any error in the rule of damages adopted in it. I am, therefore, compelled to meet and decide the question, and both from the principle and authority, to hold the rule above stated.

[CORTLAND SPECIAL TERM, January 9, 1860. *Parker*, Justice.]