31b 201
Gap248|

### The Syracuse City Bank *vs.* Tallman and others.

Where the owner of premises, leased by him for a term of years, at an annual rent of $1500, executed a mortgage thereon to W., who assigned the same to the plaintiff, and the mortgagor, subsequently and before the mortgage debt became due, assigned to T. $4500 of the rent first to accrue on the lease, of which assignment the plaintiff had notice; *Held*, in an action to foreclose the mortgage, that as between T. and the plaintiff, T. was entitled to the rents and profits of the premises, which accrued between the time when the mortgage debt became due and the time of the appointment of the receiver in the foreclosure suit; although it appeared that the mortgagor was insolvent, and the mortgaged premises were an inadequate security for the mortgage debt.

Unless there be a special clause to that effect, in a mortgage, the mortgagee has no lien upon the rents and profits; and as a general rule the mortgagor, until the sale, is entitled to remain in possession.

But courts of equity, under certain circumstances, will, after default, in an action for foreclosure and sale, anticipate the final judgment by the appointment of a receiver, and in effect put the mortgagee in possession and allow him to divert the rents and profits of the mortgaged premises from the hands of the mortgagor, and hold them as additional security for the payment of the mortgage.

To entitle him to this relief it must appear that the mortgaged premises are an inadequate security for the debt, and that the mortgagor, or other person liable for the mortgage debt, is insolvent.

This relief does not grow directly out of the relations of the parties, or the stipulations contained in the mortgage, but out of equitable considerations alone. It is not a matter of strict right, but is addressed to the sound discretion of the court.

*It seems* that when the mortgagor is insolvent, and fails to pay, at the day appointed, and the mortgaged premises are an inadequate security, as between the mortgagor and mortgagee it is within the equitable discretion of the court to allow the latter to intercept the rents and profits, for his better protection from loss. And that this is the utmost extent to which the relief has been granted, or to which it can be granted, within any admitted principle of equity.

Where a third person took, for a valuable consideration, an assignment of the rents of mortgaged premises, before any default had occurred in the payment of the mortgage debt, and before there was any reason to anticipate that the mortgagor would become insolvent; *Held* that his equity was superior to that of the mortgagee, upon the mortgaged premises proving inadequate to the payment of the mortgage debt.

APPEAL from a judgment entered at a special term, after a trial at the circuit, before a justice of the court, without

a jury. The action was for the foreclosure of a mortgage, dated April 11, 1854, given by Charles A. Wheaton and wife to Horace Wheaton, to secure the payment to him of the sum of $10,000 in two years, with interest annually. The bond and mortgage were assigned by Horace Wheaton to the plaintiff on the same day, to secure the payment of his three promissory notes of $5000 each, held by the plaintiff. The mortgage and assignment were properly recorded April 24, 1854. The mortgaged premises were leased by Charles A. Wheaton to William W. Teall, November, 1852, for ten years, at an annual rent of $1500. Lease recorded December 21, 1852. On the 17th of February, 1855, $4550 of the rent first to accrue after May 15, 1855, was assigned by Charles A. Wheaton to the defendant Tallman. Notice of the assignment was given to the cashier of the plaintiffs' bank on the 15th of May, 1855. The plaintiff, in the complaint, besides praying for a decree of foreclosure, asked for an injunction against the defendant Tallman, to restrain him from receiving the rent assigned, and that a receiver be appointed. An injunction was issued, but no receiver was appointed until the final decree was made, which was on the 21st Nov. 1856. Both the mortgagor and assignor and the maker and indorser of the notes were insolvent, and the mortgaged premises are an inadequate security.

The judgment was for the amount reported due by the clerk, upon a reference to him for the purpose. It was also adjudged that the plaintiff was entitled to the rents from the time the mortgage became due, viz. April 11, 1856, and disallowed the claim of Tallman to any of the subsequent rents. The defendant Tallman appealed.

*Charles Andrews*, for the appellant. I. The bank, by the renewal of the notes for which it held the mortgage as security, without the consent of the defendant Tallman, and after notice of the assignment of the lease to him, released any right it may have had, to priority of payment, out of the rent accruing upon the lease.

II. The defendant Tallman, as assignee of the rent, is entitled to all the rent which had become due on the lease before the actual appointment of a receiver in this action. (*Howell* v. *Ripley,* 10 *Paige,* 44. *Astor* v. *Turner,* 11 *id.* 436. 5 *id.* 38. *Welder* v. *Houghton,* 1 *Pick.* 88. 5 *Sandf. S. C. R.* 450.. 6 *Barb.* 133.) This question may be considered in two views: 1st. Where a lease is executed subsequent to the mortgage. 2d. Where a lease is executed prior to the mortgage. (1.) The case of *Pope* v. *Briggs,* (9 *Barn. & Cres.* 245,) decided that a mortgagee, after the mortgage became due, was entitled to rents accruing after notice to the lessee of the forfeiture of the mortgage, upon a lease subsequent to the mortgage. This was on the principle that the legal estate and the immediate right of entry was in the mortgagee, upon forfeiture, and that if the lessee continued in possession after notice, he should be held to be a tenant of the one entitled to the possession. This case has, however, been overruled in *Partington* v. *Woodcock,* (5 *Nev. & Man.* 672,) where it is held that while a tenant could, under such circumstances, protect himself by payment to the mortgagee, he was not bound to account to him. (*McKircher* v. *Hawley,* 16 *John.* 289.) (2.) When a mortgage has become due, the mortgagee is not entitled to the rent upon a lease executed prior to the mortgage, unless there has been an entry by the mortgagee, or in case of an equitable mortgage, what is equivalent, a decree of sale, and the appointment of a receiver. (*Ex parte Living,* 38 *Eng. Com. Law Rep.* 343.) The principle upon which, under the English law, the mortgagee is entitled to the rents, rests upon the fact that he is the legal owner of the estate, and after forfeiture is entitled to the immediate possession, or to the rents and profits, which are its equivalent. In this state, since the statute preventing a mortgagee from bringing ejectment, and giving him no right of possession before foreclosure, the mortgagee has no legal right to the rents and profits accruing, before he acquires an absolute title. The mortgagor or his lessee cannot be regarded as trespassers, and

the mortgagor takes the rents as owner, and not as receiver for the mortgagee. (4 *Kent*, 171.) If he gains the possession, it must be by contract with the mortgagor, or by one with the tenant subsequent to the forfeiture, or by the aid of a court of equity, which aid would be afforded, when the pernancy of the rents and profits became indispensable to the mortgagee's indemnity. (*Id.* 172.) The doctrine that a court of equity, can now in this state, pending a foreclosure, interfere with the rents and profits, by the appointment of a receiver, when the mortgagee has not protected himself by covenants, seems to be inconsistent with the legal relation of the parties, and to be founded upon the principle that the mortgagee is the legal owner of the estate, which no longer exists. At all events, no lien was acquired by the plaintiff till the appointment of a receiver; and the quasi possession of the receiver is not a possession as owner of the reversion, or as the representative of such owner. He can, at most, only recover such rents as accrue during his possession.

III. No specific lien was acquired by the plaintiff upon the rents till the receiver was appointed. As to the rents due, the defendant Tallman had an absolute property in them, by virtue of his assignment from Wheaton. And the appointment of the receiver would not relate back, so as to deprive Tallman of the rents which had accrued. (5 *Sandf. S. C. Rep.* 450.)

IV. The defendant Tallman is entitled to collect and receive rents sufficient to satisfy his entire claim, before any application of them is made upon the plaintiff's mortgage. The plaintiff took the mortgage with notice of the lease to Teall. When the defendant took the assignment from Wheaton, of the rents to accrue on the lease, no default had occurred in the condition of the mortgage. The mortgage was not taken upon the faith of Wheaton's remaining the owner of the lease, and by its terms it does not convey the rents. By the mortgage, the plaintiffs acquired no lien on the rents, and Tallman, having become a bona fide purchaser of the rents, before any

lien was acquired by the plaintiff, is entitled to priority until payment of his debt.

*Wm. J. Hough,* for the plaintiff. I. The judgment is clearly right. The facts in the case entitled the plaintiff to a judgment of foreclosure and sale, and for the amount of the mortgage debt against the parties personally liable to its payment, and to the rent which accrued after the mortgage debt became payable, in case of a deficiency. The complaint was taken pro confesso against all the defendants, except Tallman. The amount due upon the bond and mortgage was regularly computed and reported, pursuant to an order of reference. What right has the defendant Tallman to question it? Clearly none, under the evidence given in his behalf upon the trial, except as to the rent.

II. The plaintiff is entitled to the rents, under the facts found, which have accrued since the mortgage debt became payable, in case of a deficiency, as is adjudged. (*Woodfall's Landlord and Tenant,* 465. *Chambers' Land. and Ten.* 581. 4 *Kent,* 165, 6. 5 *Paige,* 38, 42. 8 *id.* 565, 568. 11 *id.* 436, 437. 3 *Sand. Ch. Rep.* 69, 71, 72.) · The lease was assigned to Tallman, after the recording of the mortgage, and he, as assignee, took and possesses the same rights which he could have taken as grantee of the mortgaged premises, and no greater, subject to the possession of the lessee, and to the lien of the mortgage. He stands in the place of the mortgagor, and has no superior rights. (*Woodf. L. and T.* 557, 8.) And it is well settled, that the mortgagee's right to the rents which remain unpaid, are superior to that of the grantee of the mortgaged premises. (3 *Sand. Ch.* 71.)

*By the Court,* PRATT, J. It is somewhat difficult to understand upon what principle the decision at special term was based. If I do not mistake the purport of the judgment, the quarter's rent due May 15th, 1856, was apportioned, the defendant Tallman being allowed rent to April 11th, the day

upon which the mortgage became due, and the plaintiff the rent for the remainder of the quarter and subsequently. If upon default in paying the money due upon the mortgage on the 11th of April, the bank was entitled to the rents which should subsequently accrue, it was entitled to the amount for the entire quarter ending May 15th. It was at that time, and not before, that the quarter's rent accrued. No rent for that quarter could be said to accrue before that time.

Again; costs of the litigation were allowed to Tallman, although he is substantially beaten in the suit. And if he was entitled to costs at all, he should have recovered of the plaintiff; but instead of that, the judgment directs them to be paid out of the fund, which was substantially directing them to be paid by the Wheatons, who did not litigate at all, but suffered judgment to go by default. Stronger still, the plaintiff is allowed full costs of a litigated suit, with some two or three hundred dollars extra costs to be paid out of the land; in other words, to be paid by the Wheatons. Here are two parties getting up a severe litigation on a collateral matter, and both are allowed costs and extra compensation to the amount of four or five hundred dollars, to be paid by the parties that had no interest in the litigation, and who suffered judgment to go against them by default. These matters are not before us upon this appeal, and were undoubtedly the result of some arrangement on the part of the counsel, to which the attention of the court was not probably called. Still they appear in the record. I have attended to them in order that it may appear that such practice does not meet with the approbation of the court.

But the principal question in this case arises out of the claim of the parties to the rents which accrued between the time when the mortgage became due and the time of the actual appointment of a receiver.

At common law the mortgagee was deemed to be vested with the legal title, and had the right to take the immediate possession of the mortgaged premises. The mortgagor in possess-

ion was deemed simply a tenant at will, or rather at sufferance, and hence the mortgagee could sustain ejectment against him to recover possession, without notice to quit. In equity the relations between mortgagor and mortgagee were deemed very different. There the mortgagor was deemed the owner, the mortgage being deemed a mere personal security, and the mortgagee was considered as having merely a lien or security for the payment of the mortgage debt, which he could enforce by foreclosure. These equitable considerations of course were not without their effect upon even the legal rights and remedies of the parties; so that in courts of law the mortgagor in possession could not be deemed a trespasser, nor compelled to account for the rents and profits which he had actually received while in possession. Yet the mortgagee, under his right to enter, could thus intercept at any time the receipt of accruing rents. And when the premises were in possession of a tenant who had entered under the mortgagor, prior to the mortgage, the mortgagee, by giving him notice, could compel him to pay the rent to him. At one time this right was supposed to exist, whether the lease was prior or subsequent to the mortgage; but the later cases make a distinction, holding that without a voluntary attornment to the mortgagee by a tenant under a lease subsequent to the mortgage, there is no relation of landlord and tenant existing between them. In case of a prior lease the mortgagee, by giving the tenant notice of his mortgage, could require the latter to pay him as well unpaid rent which had accrued subsequent to the mortgage as that which should thereafter accrue. (*Platt on Leases*, 165.) In this state the principles of the rule in English courts of law and equity have been essentially changed. Even before the revised statutes, ejectment could not be sustained in our courts by the mortgagee without notice to quit, and under those statutes the right to maintain ejectment is wholly taken away. The mortgage is now, both at law and in equity, in this state deemed simply a lien for the security of the mortgage debt; the mortgagor being deemed vested with the legal estate, both

at law and in equity. (2 *Paige,* 68.   5 *Wend.* 602.   2 *Barb. Ch.* 119.   11 *Paige,* 503.   3 *Denio,* 232.) Under this radical change in the relations which formerly existed between the parties, the legal remedies of the parties, as against each other, must necessarily be materially modified from what they were under the English rule.

The power contained in the mortgage simply authorizes the mortgagee, upon default of payment, to sell the premises at public auction, and to apply the proceeds of such sale to the payment of the mortgage debt. Unless there be a special clause to that effect, the mortgagee has no lien upon the rents and profits; and as a general rule the mortgagor, until the sale, is entitled to remain in possession. Hence it was held in *Ensign* v. *Colburn,* (11 *Paige,* 503,) that the mortgagee has no lien upon timber cut upon the premises in good faith, though the latter was at the time insolvent, and the premises were an insufficient security for the mortgage debt. Nor has he at law any remedy for the rents; for until sale he has no legal right to the possession. The power of sale only contemplates an appropriation of the proceeds of the sale of the premises to the payment of the debt. (10 *Paige,* 44.   5 *id.* 42.   8 *id.* 565.   6 *Barb.* 133.)

But courts of equity, adhering to the ancient practice, under certain circumstances will, after default in an action for foreclosure and sale, anticipate the final judgment of the court by the appointment of a receiver, and in effect put the mortgagee in possession and allow him to divert the rents and profits of the mortgaged premises from the hands of the mortgagor, and hold them as additional security for the payment of the mortgage. To entitle him to this species of equitable ejectment it must appear that the mortgaged premises are an inadequate security for the debt, and that the mortgagor or other person liable for the mortgage debt is insolvent. This relief, it will be readily seen from the conditions necessary to its enjoyment, does not grow directly out of the relations of the parties or the stipulations contained in the mortgage, but out of equitable con-

siderations alone. It is not therefore a matter of strict right, but is addressed to the sound discretion of the court. When the mortgagor is insolvent and fails to pay at the day appointed, and the mortgaged premises are an inadequate security, as between the mortgagor and mortgagee it might well be deemed within the equitable discretion of the court to allow the latter to intercept the rents and profits, for his better protection from loss. And this simple case seems to me to be the utmost extent to which this relief has been granted by the court in the cases, or to which it can be granted, within any admitted principles of equity.

When other parties have acquired rights before default, and especially before the happening of those contingencies which give the mortgagee any right to such relief, that is, when the right or interest of the third party accrued before the insolvency of the mortgagor, conflicting equities may arise between which the court would not decide, but leave the mortgagee to his direct remedy by judgment. And under such circumstances I find no case in the courts of this state in which the court has given the mortgagee this equitable possession of the premises before final judgment, or by such final judgment has given him possession *nunc pro tunc*, so as to enable him to collect rents which had previously accrued.

In the case of *The Bank of Ogdensburgh* v. *Arnold*, (5 *Paige*, 38,) a portion of the mortgage debt only was due, and the premises were capable of being sold in parcels, and although the premises were not sufficient to pay the debt, and the mortgagor had died insolvent, the court, after decree, refused to allow the whole premises to be sold, or to let the mortgagee into possession. The chancellor held that the mortgagee had no specific lien upon the rents and profits of the mortgaged premises until the whole amount should become due. He remarked, that if the whole debt had become due, a receiver of the rents and profits might have been appointed, in anticipation of a decree, but in that case the question arose

between the mortgagee and the widow and heirs of the mortgagor.

In the case of the *Sea Insurance Company* v. *Stebbins*, (8 *Paige*, 565,) the suit was between the mortgagor and mortgagee. The court, although it denied the receiver, reiterate the general doctrine announced in the *Bank of Ogdensburgh* v. *Arnold*.

In *Astor* v. *Turner*, (11 *Paige*, 436,) the receiver was appointed after decree. Besides, it does not appear in that case whether the defendants were themselves liable for the mortgage debt or not. So in *Lofsky* v. *Maujer*, (3 *Sandf. Ch*, 69,) the question arose between the mortgagee and a purchaser from the mortgagor subject to the mortgage. Whether he had assumed to pay the debt or not does not appear from the case. The assistant vice chancellor seemed to consider the defendant in precisely the same condition as the mortgagor would have been. He held that the mortgagee was entitled to all the rents that had accrued, after the mortgage become due, and he remarked that a court of chancery would restrain a mortgagor or his *grantee* from collecting the rents accrued, as well as those to accrue. If the grantee mentioned here is to be understood as a grantee of the equity of redemption merely, and especially a grantee who assumed to pay off the mortgage, he would stand, to all intents and purposes, in the same condition of the mortgagor, and no fault can be found with the doctrine. If he designed to go further, then his decision is in conflict with the two cases to which I will now allude. In the case of *Howell* v. *Ripley*, (10 *Paige*, 43,) the mortgagee in a junior mortgage filed a bill of foreclosure and procured the appointment of a receiver, who collected the rents. Previous to the appointment of this receiver, the senior mortgagee had also filed his bill of foreclosure, and after the collection of the rents, he procured the same person to be appointed receiver in his suit. After decree and sale of the premises, he moved the court for directions to the receiver to apply the rents so collected in satisfaction of the deficiency which was left, upon

his mortgage, the proceeds of the sale not being sufficient to satisfy the whole of it. The vice chancellor granted the motion, but the chancellor, upon appeal, reversed it, holding that the mortgagee in the second mortgage was entitled to it. These funds in the hands of the receiver were in the nature of funds in court; and if by default in the payment of the mortgage any equitable lien or rights to the rents and profits accrued to the first mortgagee, it is difficult to see why the court did not give them to him. But the chancellor held that by the appointment of the receiver the second mortgagee had substantially obtained possession, and was not therefore liable to account, and that it was only by the appointment of the receiver that a specific lien was obtained by the senior mortgagee. It will be noted in this case that the bill to foreclose the prior mortgage was filed before the appointment of the receiver in the suit upon the second mortgage; and as the rents and profits were substantially in court, if forfeiture for non-payment or the filing of the bill was of any avail to create a lien, the senior mortgagee, it would seem, would have been entitled to the funds.

The case of *Zeiter* v. *Bowman* (6 *Barb.* 133) is more directly in point. In that case, during the pendency of the foreclosure suit, the mortgagor leased the premises and took from the lessee a chattel mortgage to secure the payment of the rent, and afterwards assigned the mortgage, and the rent to accrue, to one Bowman, the defendant. After an installment of rent became due, a receiver in the foreclosure suit was appointed, but without notice to Bowman, and the tenant attorned and paid the rent to him. Bowman afterwards took the goods, upon the chattel mortgage, for the non-payment to him of the rent. The tenant brought replevin, and upon demurrer to the replication the question was whether the tenant was justified in paying the rent to the receiver. The court, at general term, sitting in this district, held that he was not. Judge ALLEN, in giving his opinion, held that the claim of the mortgagee to the rents and profits was not a matter of

right, founded upon his contract, but an equitable. claim addressed to the sound discretion of the court, and that having taken no specific lien upon the rents the complainant had no equitable right to them, as against Bowman who had taken an assignment of them; that it was clearly so up to the time of the application for the tenant to attorn; that all he had a right to then was the immediate possession of the premises, but that he was not entitled in any event to an order, especially as against the equitable rights of third parties, which should have the effect to vest in him the possession, *nunc pro tunc,* as of a time long anterior to the application.

In the case at bar, Tallman took, for a valuable consideration, an assignment of these rents, long before default in the mortgage and before, for aught that appears in the case, there was any suspicion of Wheaton's becoming insolvent, and therefore stands in a position supported by quite as persuasive equities as Bowman was in the case above cited. There cannot, it seems to me, be any doubt in regard to the rent which became due on the 15th of May and before the commencement of the suit, and I have but little doubt in regard to that which accrued before the appointment of the receiver.

I think Tallman has at least the prior equity, and that the judgment at special term should be reversed, so as to allow him to receive the rents and profits which had accrued up to and including November 15th, 1856, with costs of the appeal.

[JEFFERSON GENERAL TERM, April 7, 1857. *Hubbard, Pratt* and *W. F. Allen,* Justices.]