THE MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, RESPONDENT, *v.* JOHN E. SPICER AND JOHN D. SPICER, IMPLEADED WITH CHRISTOPHER F. NORTON AND OTHERS, APPELLANTS.

*Foreclosure of mortgage — receiver of rents and profits — rights of mortgagee, as against persons holding possesssion under the mortgagor.*

Where a person, knowing of the mortgage and that the mortgagor could not pay the mortgage, has obtained possession of mortgaged premises under the authority of the mortgagor, the owner of the equity of redemption, he may be required to surrender up such possession, or pay a reasonable rent therefor, to the receiver appointed to collect the rents and profits of the property for the benefit of the mortgagee.

APPEAL from an order directing the defendants John E. Spicer and John D. Spicer and others, to deliver and surrender possession of mortgaged premises to a receiver or accept a lease therefor from him and pay rent to him from the 2d day of July, 1877, or that a rent for the occupancy of the premises be determined upon a hearing to be had before a referee. The action was brought for the foreclosure of a mortgage on the premises in question.

*Esek Cowen*, for the appellants.

*Henry E. Davies*, for the respondent.

DANIELS, J.:

The defendant Christopher F. Norton executed and delivered his bond and mortgage to the plaintiff on the 19th of August, 1874, to secure the payment of the sum of $50,000, on the 1st of September, 1875, with interest thereon payable on the first days of every month of March and September, after the principal sum became due and on the 13th day of September, 1876, the mortgagor entered into an agreement with the Messrs. Spicer, by which he transferred to them an undivided one-half interest in a large quantity of logs to be got out for him, and agreed to saw them into lumber and send one-half of such lumber to them, to secure them for money already advanced and afterwards to be advanced for the purpose of enabling him to obtain such logs under the contracts made by him for that purpose. In case he failed to take the logs to the mill which is situated upon the mortgaged premises or to saw them into lumber, the agreement authorized the Spicers to do that and to use the mill for that purpose and deduct the expense from the moneys otherwise payable to him by them. He did fail to perform the agreement on his part, and the Spicers accordingly, on or about the 20th of June, 1877, took possession of the saw-mill to saw the logs into lumber. While they were in such possession, and on the 2d of July, 1877, an order was made upon affidavits showing that the property mortgaged was an inadequate security for the debt, appointing a receiver of the mortgaged property with power to take possession, make leases and collect the rents accruing for their occupancy.

On the 3d of July, 1877, and after the appointment of the receiver had been made complete by the filing of his bond, he took formal possession of the saw-mill, but on the fifth of that month he was dispossessed again by the Spicers, who, despite his prohibition, continued to use it for the purpose of sawing logs into lumber, under the terms of their agreement with the mortgagor. For these acts, combined with their refusal to allow the receiver to hold and control the possession of the mill, they were required to show cause why they should not be punished for contempt. And by a direction contained in the order appointing the receiver they were also required to show cause why he should not be continued as receiver during the pendency of the action. They

were not punished for the contempt charged, but the appointment of the receiver was continued with the further authority prescribed in the order from which the appeal has been taken. In support of the appeal it has been claimed that the equities of the Spicers, under their agreement, are superior to those of the plaintiff under its mortgage, and for that reason the order should be reversed. It is not denied but that the court has complete power to appoint a receiver with the authority conferred by the order over the property designated for that purpose. And as the law appears to be settled, so much of a concession was required from the learned counsel who presented the case for the Spicers. For where a party may have obtained possession of mortgaged premises under the authority of the party who has executed the mortgage, and is the owner of the equity of redemption in them, such occupant may be required to surrender up his possession, or pay a reasonable rental for its continuance, during the pendency of the action, to the receiver appointed to collect the rents and profits of the property for the benefit of the creditor under the mortgage. (*Reid* v. *Middleton*, 1 Turner & Russ., 455; *Astor* v. *Turner*, 2 Barb., 444; *Randfield* v. *Randfield*, 7 Weekly Rep., 651; *Lloyd* v. *Mason*, 2 Milne & Craig, 487.)

The real point, therefore, to be determined is, whether the plaintiff's equitable right to the rents and profits of the mill was shown to have been superior to that of the Spicers under their agreement for its use with the mortgagor. It was taken by them from him, not only after the mortgage which was properly recorded was executed, but in addition to that, after default in the payment of the entire principal secured had been made by the debtor. Of those facts they had, at least, constructive notice from the record. And the agreement contains a clause from which it may be reasonably inferred that they had actual notice of the existence of an incumbrance on the property, under which they might be required to make payment for their contemplated use of the mill, in sawing the logs into lumber. For in that it was provided that " if in order to secure the use of said mill it shall become necessary to pay off any incumbrance on said mills, or either of them, the said parties of the second part may do so and deduct the amount so paid, and the interest on the same from any sum which might otherwise be due, or coming to the said party of the first part " under the agreement.

This stipulation assumed the existence of some incumbrance on the mill of a superior nature to the liberty given by it to the Spicers. And as no other was shown to exist, under which their possesssion could possibly be endangered, it may be fairly inferred that they intended to refer to the large incumbrance resulting from the plaintiff's mortgage. It cannot be supposed that such a provision would have been made for any other purpose than to meet the consequences of a contingency which there was some probability might afterwards arise.

The affidavits used in support of the motion were clearly sufficient to show that the mortgagor was insolvent, and the property itself an inadequate security for the debt at the time when the proceedings for the appointment of the receiver were instituted. And as no particular change seems to have been made in his financial condition between that time and the date of his agreement with the Spicers, it is very probable that he was then also insolvent. The advances he was then and previously had been receiving from them to enable him to obtain his logs and go on with his business, and the peculiar nature of the agreement itself, very decidedly increase that probability. He not only transferred to them an half interest in the logs, but he included the numerous contracts he had made under which they were to be obtained, and the moneys were, in great part, certainly, if not wholly, to be applied to secure the observance of those contracts by the persons with whom they had been made. And in the stipulations contained in the agreement he provided for what might be done, in the event that he himself failed to perform and proved unable to retain the possession of his mills to be used in the promotion of that end. It was such an agreement as only a person in desperate circumstances would be expected to make. He was compelled to rely upon the capital of others for the prosecution of his ordinary affairs, with the conceded probability that in the end that would prove, as it did, ineffectual. Very good reason exists for believing that the mortgagor was then not only insolvent, but, in addition to that, that the Spicers believed that to be the case, and because of that belief, did what they could for their own future protection. And the circumstance mentioned by John D. Spicer in his affidavit, that he informed Beers that if his firm purchased Morton's interest in the logs at the sheriff's sale,

when advertised, they should require the mill to saw them, and in that event would pay him, as receiver, a reasonable rent for that use of it, tends very much to fortify the correctness of that conclusion. If they had believed their right to its use to be superior to that of the plaintiff under its mortgage, such a proposal would hardly have been made. They were apparently convinced that they could not properly use the property without the receiver's permission, and that belief very probably resulted from their knowledge of the existence of this mortgage, their acquaintance with the value of the property described in it, and the known insolvency of the mortgagor at the time when their agreement was executed.

Under the authorities relied upon by both of the parties, these facts justified the appointment of a receiver of the rents and profits during the pendency of the action. (*Howell* v. *Ripley*, 10 Paige, 43; *Lofsky* v. *Maujer*, 3 Sand. Ch. [m. p.], 69; *Syracuse Bank* v. *Tallman*, 31 Barb., 201.) And they were reasonably well established in the case and the order appealed from was rightly made. The superior equities were with the plaintiff.

The order should therefore be affirmed, with ten dollars costs and the disbursements on the appeal.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., BRADY and DANIELS, JJ.

Order affirmed, with ten dollars costs and disbursements.