No. —

CHARLES BURLINGAME, AS ASSIGNEE IN BANKRUPTCY OF HENRY E. WOLCOTT, v. JOSEPH Y. PARCE, THE TRADERS' NATIONAL BANK OF ROCHESTER AND OTHERS.

*Assignee in bankruptcy — power of, to maintain actions in State courts — Receiver of .mortgaged premises — when appointed.*

An assignee in bankruptcy may maintain an action in a State court to foreclose a mortgage belonging to the estate of the bankrupt.

To authorize the appointing of a receiver of the rents and profits of mortgaged premises, pending an action of foreclosure, it must clearly appear that they are an inadequate security for the debt, and that the mortgagor, or other person personally liable for the debt, is insolvent.

APPEAL by defendant Hubbell, from an order made at the Monroe Special Term, appointing a receiver of the rents and profits of the premises covered by the mortgage, for the foreclosure of which this action was brought by the assignee in bankruptcy of the mortgagee.

Defendant Hubbell is the assignee of the mortgagor, under a general assignment for the benefit of creditors.

*W. S. Hubbell,* appellant, in person.

*McDonald & Noyes,* for the respondents.

MERWIN, J.:

It is claimed by the appellant that the court has no jurisdiction of the action by reason of the fact that plaintiff, an assignee in bankruptcy, seeks hereby to enforce the collection of a portion of the assets of the bankrupt.

Under the law as it stood prior to the passage of the Revised Statutes of the United States, June 22, 1874, it was held, in *Claflin* v. *Houseman* (3 Otto, 130), by the United States Supreme Court, that State courts had jurisdiction of suits to recover the assets of the bankrupt, although, as in that case, the cause of action accrued solely under the provisions of the bankrupt law; it was an action to recover for a preference in fraud of the act.

By the United States Revised Statutes it was provided (§ 711, sub. 6) that the jurisdiction vested in the courts of the United States should be exclusive of the courts of the several States, " of all matters and proceedings in bankruptcy," that the District Courts (§ 563, sub. 18) should have in their respective districts " original jurisdiction, in all matters and proceedings in bankruptcy," that (§ 4972, sub. 2) such jurisdiction should extend " to the collection of all the assets of the bankrupt," that (§ 630) the Circuit Courts should have jurisdiction in matters in bankruptcy " to be exercised within the limits and in the manner provided by law."

These provisions, whether inadvertently or not, as is intimated in *Claflin* v. *Houseman,* operated to make the jurisdiction of the United States courts exclusive in all cases legally within their operation.

The question therefore, is, whether the present action is such a case.

In *Olcott* v. *Maclean* (10 Hun, 277), the cause of action was based on an alleged violation of the bankrupt act, being to recover for a preference made void by its provisions, and the General Term, first department, held that the State court had no jurisdiction.

The same court, in *Brewers and Maltsters' Insurance Company* v. *Davenport* (10 Hun, 264), held that the State court had jurisdiction of an action brought by a debtor of the bankrupt to determine whether the assignee in bankruptcy, or an attaching creditor were entitled to certain moneys that plaintiff was ready to pay. In *Goodrich* v. *Wilson* (119 Mass., 429) which was an action by an assignee in bankruptcy to recover for money paid in fraud of the bankrupt act, it was held the State court had jurisdiction. The force of section 711 of the United States Revised Statutes, above referred to, does not seem to have been considered, but construction was given to section 2, chapter 390, of the Laws of 1874, which provided " that the court having charge of the estate of any bankrupt, may direct that any of the legal assets or debts of the bankrupt, as contradistinguished from equitable demands, shall, when such debt does not exceed $500, be collected in the courts of the State where such bankrupt resides, having jurisdiction of claims of such nature and amount." The effect of this provision, it was there said, is not to confer or take away jurisdiction of the State courts, but simply to allow the federal courts of original jurisdiction to decline to entertain certain actions. This seems to me a reasonable view of that law.

The decision of the present case depends, I think, on the proposition whether or not it is a case arising under any law of the United States. Of such cases, exclusive jurisdiction may be conferred on the United States courts. (Constitution, art. 3, § 2, sub. 1.)

*Olcott* v. *Maclean* (*supra*), was clearly such a case, and was so considered by the court. (Page 280.)

If the present is not such a case, it is not within the legal operation of the law of congress.

The subject of the present action is the mortgage and the rights conferred by it or claimed under it. Those in no sense arise under any law of the United States.

The question is not whether the construction of some law of the United States may not be incidentally involved, but whether *the case arises under the law.* Does it there originate — have its base ? That cannot be here truthfully said. In Story on Constitution (§ 1646), it is said, a case in the sense of this clause arises when some subject touching the Constitution, laws or treaties of the United States is submitted to the courts by a party who asserts his rights in the form prescribed by law. In *Osborn* v. *United States Bank* (9 Wheat., 738), it was said that any suit brought by the United States Bank was a case arising under a law of the United States, for the reason that the bank was incorporated under such law. A distinction was, however, admitted between the party and the cause (page 827), and it was said that the party may originate under a law with which the cause has no connection, and if the act of congress was a simple act of incorporation, it was admitted the distinction might be entitled to great consideration. (See *Bank* v. *Devaux*, 5 Cranch, 61.)

The Osborne case was an action brought to restrain the officers of the State of Ohio from collecting from the bank a tax, imposed on one of its branches for doing business in that State without being allowed to do so by the laws thereof, and of course it involved the construction of the law chartering the United States Bank, and was based on the law itself. It may be, as is said in that case, that all contracts made with an institution so chartered would be cases arising under a law of the United States, and still it would not follow that, where the only operation of the law was to provide for the transfer of certain causes of action already existing, those causes of action, when sought to be enforced by the assignee, would all be cases arising under such law. As well might all actions of ejectment, in which the source of title was an United States land patent, be cases arising under an United States law. As well might all real-estate actions brought by a foreign-born citizen, after naturalization, be such cases. Suppose the assignee of a bankrupt should assign a mortgage, or any chose of action, that had been previously owned by the bankrupt and came into the hands of the assignee as assets, would it follow that the suit on such assigned claim must be brought in the United States courts ?

It will be observed that, by section 5049 of the bankrupt act, a

copy of the assignment, duly certified by the clerk of the court, is conclusive evidence of the right of the assignee to sue for the property of the bankrupt.

My opinion is that this is not a case arising under any law of the United States, and is not, therefore, affected by, or within the operation of the United States statute, giving exclusive jurisdiction to the courts of the United States.

Proceeding, then, to the merits, the question is, whether the receiver was properly appointed. At the commencement of the suit, an injunction order was granted restraining the defendants from interfering with, or taking away any of the trees or stock, the premises being a nursery. Were this in force still, not modified or waived, it would seem to me almost a necessity to have a receiver to properly care for and market the stock on the premises. But it appears by the papers that the parties, since the injunction, have agreed that defendant Hubbell might dig and use the stock, and hold the avails subject to the order of the court. This, therefore, disposes of any occasion for having a receiver, by reason of the injunction being in force, and leaves the propriety of the appointment to be determined upon the other facts in the case.

To entitle a mortgagee to have a receiver appointed, it must appear that the mortgaged premises are an inadequate security for the debt, and that the mortgagor, or other person personally liable for the debt, is insolvent. (*Bank* v. *Tallman*, 31 Barb., 201; *In the Matter of Prime*, 1 id., 306; *Bank of Ogdensburgh* v *Arnold*, 5 Paige, 38; *Shotwell* v. *Smith*, 3 Edw. Ch. [m. p.], 588, *Sea Ins. Co.* v. *Stebbins*, 8 Paige, 565; *Astor* v. *Turner*, 11 id., 436; *Frelinghuysen* v. *Colden*, 4 id., 204.)

The inadequacy should be clearly made out. (*Shotwell* v. *Smith*, 3 Edw. Ch. [m. p.], 588.) Is it so in the present case? The plaintiff, in his verified complaint, alleges generally, that the premises are a very doubtful and inadequate security for the mortgage, and will not, in his opinion, bring any such sum at forced sale.

This is denied by Hubbell and Parce, and by Deland, an apparently disinterested party. The burden is on the plaintiff to show the inadequacy. I don't think it can be fairly said, on the papers presented, that that fact is established.

It is suggested Hubbell has no defense, still he has the right to contest the propriety of this provisional remedy.

The order appointing a receiver should therefore be reversed, with ten dollars costs and disbursements.

SMITH, J., concurred in the result. TALCOTT, P. J., concurred on the ground that this court, in *Wente* v. *Young*;[*] have held in favor of the jurisdiction.

Order appointing receiver reversed, with ten dollars costs and dis·bursements.