FLORENCE L. HOLMES, Plaintiff, *v.* MARIANA I. GRAVENHORST, Respondent, and JOHN DOE, Tenant, Defendant. EUGENE M. TRAVIS, Receiver, Appellant.

Second Department, April 26, 1933.

*Irving C. Maltz,* for the appellant.

*John E. Sexton,* for the respondent.

DAVIS, J. In this action to foreclose a mortgage a receiver has been appointed by the court. The order contained the usual provision directing the receiver to collect " rents due and unpaid, or hereafter to become due." The tenants and " such other person or persons who may be in possession " were directed to attorn to the receiver. The receiver then applied at Special Term for an order fixing the reasonable value of the use and occupation of the premises by the mortgagor, still in possession as, we will assume, the sole occupant thereof. The motion, opposed by the owner, was denied. On this appeal the somewhat narrow question is presented as to whether the court was legally authorized to grant the motion. No question of discretion is involved.

The mortgage contained the following covenant: " That the holder of said mortgage, in any action to foreclose it, shall be entitled (without notice and without regard to the adequacy of any security for the debt) to the appointment of a Receiver of the rents and profits of said premises."

These covenants have been common enough for the past few years. Their effect has been given legal interpretation by statute. (Real Prop. Law, § 254, subd. 10, added by Laws of 1930, chap. 166.)

As will presently be more fully stated, the question of the owner's liability under such circumstances has not been questioned for many

years, or until the decision by the Court of Appeals in November, 1932, in *Prudence Co.* v. *160 W. 73d St. Corp.* (260 N. Y. 205). Since then, at different Special Terms, there have been varying interpretations of the language of the opinion in that case, though there can be no doubt concerning the particular question decided. Conflicting and contradictory decisions have resulted. In this case, in denying the motion, the learned justice at Special Term in his opinion, speaking of the effect of the *Prudence* case, said: " The basis for fixing occupational rent is thus swept away." The respondent makes the same argument here.

We do not so read the opinion in the *Prudence* case. We leave its interpretation — if any is needed, which we doubt — to the court in which the opinion was written. We stand on the doctrine as it has stood, and in our view still stands, that a court of equity, even if unaided by statute, may appoint a receiver to take possession of the premises in a case involving the foreclosure of a mortgage, to conserve the property against waste, preserve the security, collect rents fixed by contract between tenant and owner, and fix a fair occupational rent in the absence of an existing agreement thereon. All this for the purposes above stated and to apply the amount left over after the sale to the payment of a deficiency; or to return the whole or any remaining part to the owner as the conditions disclosed at that time established the validity of his claim thereto.

The law concerning mortgages has at different periods undergone certain changes to maintain the fundamental rights of the mortgagor and to give to the mortgagee such remedies as will make the mortgage an effective instrument to secure a debt. We state familiar legal history as a basis of subsequent discussion when we say that originally a mortgage was a grant on condition, becoming absolute on default. (Coke on Littleton, book II, chap. XXVII, § 332, 205a; Black. Comm. book II, chap. 10, p. 158; *Barson* v. *Mulligan,* 191 N. Y. 306, 313.) Then in the Court of Chancery was developed the doctrine of the equity of redemption until the mortgage became a security for the payment of a debt or the discharge of some other obligation — the security being redeemable on the payment or discharge of such debt or obligation. (21 Halsbury Laws of England [Mortgages], p. 70.) The legal title remained in the mortgagor, and the mortgagee became a mere lienor with no estate in the land covered by the mortgage and with the right to sue for ejectment taken away by an early statute. (*Becker* v. *McCrea,* 193 N. Y. 423, 426; *Barson* v. *Mulligan, supra,* p. 315.) Until an action for foreclosure was commenced, the right of the mortgagor to possession remained unchallenged. As a necessary development of these rights

of the mortgagor, certain correlative rights of the mortgagee followed for the protection of the security and the payment of the debt. He was given, among other things, the remedy of foreclosure and sale. (Editor's Notes, 2 Coke on Littleton, *supra* [Thomas ed.], p. 33 *et seq.*)

An incidental remedy given in a foreclosure action to the mortgagee was that of a receivership, as ∘a right springing from the mortgage after default where an action had been commenced to foreclose. It included in its exercise the taking of the property from the possession of the mortgagor. It was given " to preserve the property if it is in danger, or, by intercepting the income, to provide a fund for payment of the mortgage." (Halsbury, *supra*, p. 261; High Receivers [4th ed.], p. 786.) This rule, antedating any statute relating thereto, was early recognized and adopted with some caution by the courts of equity of this State. (*Bank of Ogdensburgh* v. *Arnold*, 5 Paige, 38; *Sea Ins. Co.* v. *Stebbins*, 8 id. 565. (See, also, *Hollenbeck* v. *Donnell*, 94 N. Y. 342.) While in some jurisdictions the right was rather strictly limited to cases of waste or destruction, or where it was clearly shown that the security was insufficient (High, *supra*, p. 787; 19 R. C. L. [Mortgages], § 369), the rule became somewhat more liberal in the courts of this State, particularly when it was a matter of agreement between the parties; and, as we have already stated, the right has been confirmed by statute. (Civ. Prac. Act, §§ 974, 975; Real Prop. Law, § 254, subd. 10.)

A receiver when appointed is not the agent of the mortgagee, but an officer of the court and accountable to the court for his acts and subject at all times to its direction. He represents the court and his possession is its possession, although the title to the property has not yet changed. (*Davis* v. *Gray*, 83 U. S. 203, 217; *United States Trust Co.* v. *N. Y., W. S. & B. R. Co.*, 101 N. Y. 478, 483; Jones Mort. [8th ed.] § 1951.)

With the receivership goes the right to take the full possession of the premises from the owner, who is required to surrender his possession. (*Citizens' Savings Bank* v. *Wilder*, 11 App. Div. 63.) When the court takes over possession of the property, as we view it, there remains with the mortgagor nothing more than the legal title soon to be lost on the sale, the right to redeem, the rents theretofore collected by him, and the right to any surplus arising on the sale. As to the rents due but unpaid, it seems well settled that the receiver takes them. (*Wyckoff* v. *Scofield*, 98 N. Y. 475, 478; Jones Mort. *supra*, § 1952.) " * * * the court becomes virtually the landlord of the property, collecting the rents by its officer; and the court will not let the possession of the receiver,

which is its own possession, be disturbed by any one without its permission." (Thomas Mort. [3d ed.] § 959.)

We have stated somewhat simple and familiar principles by way of leading up to the particular question here considered. If the court through its receiver takes possession of the property it is not readily conceivable that it must share such possession with the tenants, the owner, or any one else. It will recognize existing contracts of tenants for rental as long as they are performed by the latter, and will enforce their performance if necessary. If a tenant is occupying the property without an agreement to pay rent, then the court may fix the reasonable value of use and occupation, and the occupant may pay or vacate — there being no forced contract to remain. When the court is called upon to appoint a receiver, any one of three situations may be presented — the mortgaged property may have been entirely leased to another or others; it may be leased in part to another or others and occupied in part by the owner; or no part of it may be leased, but remain entirely occupied by the owner. In either case there are rents and profits; and it is difficult to make distinction in principle. We think that the rights of the owner are not superior in this respect to those of his tenants. If he still could share possession with the court, then the receivership would be futile if there were no tenants paying rent. It should be added that there is vested in the court a discretion both as to the appointment of a receiver and the extent to which the court will give him power where it is made to appear that the security is ample, or where it would be inequitable or hardship would result. (*Hollenbeck* v. *Donnell, supra; New York Building Loan Co.* v. *Begly,* 75 App. Div. 308; *Syracuse City Bank* v. *Tallman,* 31 Barb. 201.) This is undoubtedly the rule when there is no covenant in the mortgage such as is found here; and as to those in which the covenant is contained, whether the court is bound to appoint a receiver is a. question we are not now called upon to decide. (See *Tucker* v. *Nabo Construction Corp.,* 108 N. J. Eq. 449.) We are here considering the legal right only.

As we have earlier stated, the right of the receiver to apply to the court to fix the value of the occupational use by the owner has never been seriously questioned in this State. As early as 1848 it was so decided at Special Term. (*Astor* v. *Turner,* 3 How. Pr. 225.) In 1913, HOTCHKISS, J., writing for an unanimous court in *Public Bank of New York* v. *London* (159 App. Div. 484), sustaining the principle, said: " The fact that the jurisdiction of the court in such cases is so elementary is probably the reason why so few precedents are to be found, but *Gunning* v. *Bowers* (1 Law Bull. 19) is directly in point." In *Fleischer* v. *Terker* (232 App. Div. 822)

the memorandum decision reported does not state the facts. The record and the report on file in this court show that a receiver was appointed in an action to foreclose a mortgage on property of two tenants in common occupying separate parts of a two-family house. Occupational rent was fixed. One co-owner had been evicted for failure to pay the rent so fixed. The other contested the right to collect for several months following the appointment of the receiver. We held that there could be a recovery from the owner from the date of the appointment of the receiver — there being no question concerning the liability, but only the length of the term. Receivers have been appointed at Special Term and occupational use by the owner fixed as a matter of course for many years.

Such is the rule in England. Quoting from Halsbury (*supra*, vol. 21, p. 263): " Upon a receiver of real or leasehold property being appointed, the tenants are directed to attorn and pay their rents in arrear and growing due to him; and if the mortgagor is in possession, he must attorn tenant at an occupation rent, or in the alternative deliver up possession to the receiver." In principle it was so decided in 1837. (*Lloyd* v. *Mason*, 2 My. & Cr. 487.) Other cases cited in the text are *Matter of Burchnall* (*Walker* v. *Burchnall* [1893] W. N. 171); *Yorkshire Banking Co.* v. *Mullan* (L. R. [1887] 35 Ch. Div. 125).

*Prudence Co.* v. *160 W. 73d St. Corp.* (*supra*) determined that there was no power in the court to make, in behalf of a receiver, a new contract for rent in the case of a tenant in possession or one in a similar relation, where there was an absence of fraud or bad faith in the existing lease. Theretofore, the courts, upon the application of the receiver, had fixed the reasonable value of use and occupation where it appeared that the rent reserved in the lease between owner and tenant was inadequate in amount according to prevailing rates. The doctrine was definitely settled to the contrary in the *Prudence* case. A contract fairly and honestly made will not be impaired. Co-operative owners of a part of an apartment house who had made an agreement to pay a fixed " maintenance charge " were given the same status as tenants and their contract stood unimpaired, without permitting an addition to it of a sum making it equal to the reasonable value of use and occupation. The decision did not affect the right of the receiver to collect the " maintenance charge " as long as he was in possession and kept the property maintained; nor did it turn back to the mortgagor the right to collect such charges, which were in the nature of rent.

We read in the *Prudence* case the enunciation of no new doctrine in respect to the right of a receiver to take possession of mortgaged

property pending the sale and to collect from those in possession, whether tenants or owner, the income to provide a fund for the payment of the mortgage; with the duty to turn back any surplus to the owner. We find no repudiation of the doctrine in this respect as stated in the cases heretofore discussed. No reference to these cases is made in the opinion, as we would expect if they were to be disapproved. As we said at the outset, we have at no time read the opinion in any such light. The question certified and answered, as we think, makes clear the limitation to the precise point decided. The elaborate and doubtless unnecessary discussion we have undertaken is for the reason that certain language in the opinion has resulted in conflicting decisions as it has been differently interpreted on motions at Special Term. If there is to be a change in the doctrine in respect to the rights of receivers of mortgaged property under process of foreclosure, we leave it to be stated or clarified by a plain decision to that effect in our highest court.

The order should be reversed on the law, without costs, and the matter remitted to the Special Term to fix the value of the use and occupation of the premises, or for the parties to proceed otherwise as they may be advised.

LAZANSKY, P. J., YOUNG, HAGARTY and CARSWELL, JJ., concur.

Order denying the receiver's motion to fix the rental value of the premises occupied by the owner reversed on the law, without costs, and the matter remitted to the Special Term to fix the value of the use and occupation of the premises, or for the parties to proceed otherwise as they may be advised.