CHARLES H. BARSON et al., Respondents, v. AGNES K. M.
MULLIGAN et al., Appellants.

1. REAL PROPERTY — MORTGAGE — RELATIVE RIGHTS OF MORTGAGOR
AND MORTGAGEE AS TO POSSESSION OF MORTGAGED PREMISES. Under
the provision of the Revised Statutes (2 R. S. 312, § 57), re-enacted in sec-
tion 1498 of the Code of Civil Procedure, that "No action of ejectment
·shall hereafter be maintained by a mortgagee, or his assigns or repre-
sentatives, for the recovery of the possession of the mortgaged premises,"
a mortgagee must be regarded as a mere lienor, having no legal estate in
the land covered by his mortgage, and, hence, cannot obtain possession of
the mortgaged premises, prior to foreclosure, so as to constitute himself
a mortgagee in possession, except by the consent of the mortgagor, and
he has no more right to enter and take possession of the premises, without
the consent of the latter, than a stranger would have.

2. SAME — WHEN MORTGAGEE LAWFULLY IN POSSESSION — CONSENT
OF MORTGAGOR. The determination of the question whether a mort-
gagee, who has entered mortgaged premises with the consent of the owner
thereof, may be regarded as a mortgagee lawfully in possession, or not,
depends upon the facts peculiar to each particular case, which may be
considered as falling within one or the other of two general classes.
Whenever it appears that the mortgagor has consented, either expressly
or impliedly, by contract or conduct, to the entry of the mortgagee,
for purposes or under circumstances not inconsistent with their rela-
tive legal rights under the mortgage, the possession of the mortgagee
may properly be regarded as lawful. But, on the other hand, when the
entry of the mortgagee is effected by the consent of the mortgagor under
a relation that is hostile to, or inconsistent with, the legal rights of the
parties under the mortgage, then the mortgagee's possession must stand
or fall without reference to his mortgage.

3. SAME — EJECTMENT — WHEN MORTGAGEE WHO ENTERS UNDER A
LEASE CANNOT CHANGE TENANCY INTO POSSESSION UNDER THE MORT-
GAGE. Where it appears, in an action brought by the owners of land, as
tenants in common, to recover the possession thereof upon the expiration
of a tenancy by the curtesy therein, that a defendant who went into pos-
session of the premises in suit, under a lease from the tenant by the cur-
tesy, was in possession, under a renewal thereof, when the term was cut
short by the death of the lessor, and that prior thereto such lessee had
acquired title, by assignment, to a purchase-money mortgage covering
the premises, which she had thereafter assigned to another, who was the
holder thereof at the time of the termination of the lease, but who, four
days thereafter, executed a re-assignment to the lessee who had remained
in possession, it cannot be successfully contended that the re-assignment

of the mortgage to the lessee changed her tenancy into a lawful possession under the mortgage, since the termination of the lease by the death of the lessor extinguished her right of possession and she could not, even if then in possession of the mortgage, constitute herself a mortgagee in possession without the consent of the owners, for her entry and occupation had taken place under a lease, which precluded her from asserting a claim inconsistent with her tenancy. The fact that the lessee regained possession of the mortgage four days after the expiration of the lease does not change her relations with the owners of the premises, in the absence of evidence that she then asserted any right of possession under the mortgage; if it was her purpose to assume the relation of a mortgagee in possession she should have disclosed it then, and her silence was an admission that she regarded herself as maintaining the character of a tenant, in which she entered and occupied the premises to the time of her lessor's death.

4. EJECTMENT — ERRONEOUS EXCLUSION OF EVIDENCE — TENANT IN COMMON MAY BIND HIS OWN INTEREST THOUGH NOT THAT OF HIS CO-TENANTS. The exclusion, during the trial of such an action, of answers to questions put to the lessee as a witness, in which she was asked to state a conversation which she had testified had taken place between one of the reversioners and herself, and to state whether the said reversioner had said anything to her with reference to her remaining in possession of the premises under her mortgage, cannot be sustained on the ground that the inquiry was not within the issues raised by the pleadings, where the complaint alleges that the defendants are wrongfully in possession without leave of the plaintiffs and without legal right, and the answer denies the allegation; although the reversioner in question, being one of several tenants in common, could not affect the interest of his co-tenants, still he had the right to bind himself and his own interest, and as the questions were broad enough to cover a transaction in which he might have bound or affected his own right to possession, the evidence sought to be elicited was competent and material.

5. TITLE — PRESUMPTION OF DEATH WITHOUT HEIRS — WHEN TENANTS IN COMMON HAVE IMMEDIATE RIGHT OF ENTRY AS AGAINST MORTGAGEE. A contention that the plaintiffs cannot recover because they failed to establish title to an undivided one-third of the premises in dispute, cannot be sustained where the defect in title is caused by the fact that one of the tenants in common disappeared thirty-seven years before the trial, and it appears that he was unmarried at the time, has never been heard of since and that neither he nor any one purporting to be his issue has made any claim to an interest in the premises in dispute, since such facts are sufficient to require a court or jury to indulge in the presumption of death without issue, and in any event, the plaintiffs, having an unquestioned title to two-thirds of the estate, had an immediate right to entry unless the mortgagee was lawfully in possession, under her

mortgage, of the whole or some part of the premises, since she had no right to hold the premises otherwise, even though there might be some uncertainty as to the extent of the title of the plaintiffs.

6. Ejectment — Rule of Damages — Double Damages Recoverable Only When Holding Over Is Willful. The provisions of sections 1496, 1497 and 1531 of the Code of Civil Procedure prescribe the rule of damages which may ordinarily be recovered in actions of ejectment, but there is nothing in them to indicate that they were designed to exclude, in a proper case, the right to double damages provided for in section 200 of the Real Property Law (L. 1896, ch. 547). The latter statute, however, can only be invoked upon the termination of a tenancy for life or years, when a proper notice has been served, and the tenant or any person in collusion with him *willfully* holds over after the expiration of thirty days from the service of a notice to quit, and it is essential to a good cause of action thereunder that the complaint should allege the holding over to be *willful*, and this allegation must be supported by proof that the holding over was deliberate, intentional, obstinate, unreasonable or perverse.

*Barson* v. *Mulligan,* 120 App. Div. 879, reversed.

(Argued January 23, 1908; decided March 3, 1908.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 26, 1907, affirming a judgment in favor of plaintiffs entered, upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alton B. Parker* and *William G. Mulligan* for appellants. The defendants were entitled to show that at the time of the commencement of the action Mrs. Mulligan was the holder of the Fisher mortgage and in possession thereunder, and any evidence tending to establish such facts was erroneously excluded. (*Van Duyne* v. *Thayre,* 14 Wend. 234; *Phyfe* v. *Riley,* 15 Wend. 248; *Hubbell* v. *Sibley,* 50 N. Y. 468; *Hubbell* v. *Moulson,* 53 N. Y. 225; *Winslow* v. *McCall,* 32 Barb. 241; *Townshend* v. *Thomson,* 139 N. Y. 152; *Bolton* v. *Brewster,* 32 Barb. 389; *Campbell* v. *Ellwanger,* 81 Hun, 259; *M. A. B. Church* v. *O. S. B. Church,* 73 N. Y. 82; *Shield* v. *Lozier,* 34 N. J. L. 496.) Under the general denial the defendants were entitled to establish by any

proof competent for that purpose the fact of the ownership of the mortgage. (*Jackson* v. *Ramsay*, 3 Cow. 75; *Raynor* v. *Timerson*, 46 Barb. 518; *Gilman* v. *Gilman*, 111 N. Y. 265; *Roberts* v. *Baumgarten*, 110 N. Y. 380; *Hall* v. *La France Engine Co.*, 158 N. Y. 570; *Benton* v. *Hatch*, 122 N. Y. 322; *Crowley* v. *Murphy*, 11 Misc. Rep. 579; *Hughes* v. *Hughes*, 10 Misc. Rep. 180; *Whitney* v. *Whitney*, 171 N. Y. 176; *Griffin* v. *L. I. R. R. Co.*, 101 N. Y. 348.) The trial judge erred in excluding the evidence offered to show that defendant held possession of the premises in question as mortgagee with the consent of the plaintiffs. (*Becker* v. *McCrea*, 119 App. Div. 56; *Gillett* v. *Stanley*, 1 Hill, 121; *McGlamory* v. *McCormick*, 99 Ga. 148; *Lynch* v. *Kirby*, 36 Mich. 238; *Skyle* v. *King*, 9 Ky. 385; *Murphy* v. *Orr*, 32 Ill. 489; *Towns* v. *Matthews*, 91 Ga. 546; *Crowley* v. *Murphy*, 11 Misc. Rep. 579.) The trial judge erred in withholding from the jury the question whether plaintiffs had proven title to one-third part of the premises in dispute as heirs of George W. Barson. (*Murphy* v. *Orr*, 32 Ill. 489; *Hardin* v. *Kirk*, 49 Ill. 153; *Dean* v. *M. E. R. Co.*, 119 N. Y. 540; *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Kenedy* v. *McAllaster*, 31 App. Div. 453; *Cambrelleng* v. *Purton*, 125 N. Y. 610, 616; *University* v. *Harrison*, 90 N. C. 385; *Emerson* v. *White*, 29 N. H. 482; *Stinchfield* v. *Emerson*, 52 Me. 465; *Hurdle* v. *Stockley*, 6 Houst. 447; *Skinner* v. *Fulton*, 39 Ill. 484; *Hollingsworth* v. *Barbour*, 4 Pet. 466.) The trial judge erred in ordering the damages to be doubled. (*Holmes* v. *Davis*, 19 N. Y. 488; *Ainslie* v. *Mayor, etc.*, 1 Barb. 168; *Clason* v. *Baldwin*, 129 N. Y. 183; *Wallace* v. *Berdell*, 101 N. Y. 13; *Woodhull* v. *Rosenthal*, 61 N. Y. 382.)

*Henry A. Forster* and *Frederick P. Forster* for respondents. The trial judge properly excluded all evidence tending to prove the matters claimed by the defendants to entitle them to withhold the property from the plaintiffs, because "No such issue was presented by the pleadings." Under an allegation of ownership of personal property at a particular time,

parol proof that an absolute written assignment thereof to a third person was only intended to be a pledge or as collateral security for a loan, or of a formal reconveyance by the alleged pledgee after the expiration of the time, is inadmissible. (*Blake* v. *Corbett*, 120 N. Y. 327; *Matter of Pullman*, 46 App. Div. 574; 20 Am. & Eng. Ency. of Law [2d ed.], 900; 5 Am. & Eng. Ency. of Law [2d ed.], 985; *M. L. Ins. Co.* v. *Robinson*, 24 App. Div. 570; *G. L. Ins. Co.* v. *Casey*, 98 App. Div. 88; 184 N. Y. 554; *N. Y. L. Ins. Co.* v. *Casey*, 178 N. Y. 381; *Wakefield Bank* v. *Truesdell*, 55 Barb. 602; *Blake* v. *White*, 1 Y. & C. 420; 2 Brandt on Suretyship [3d ed.], § 386; 22 Am. & Eng. Ency. of Law [2d ed.], 531.) Even if the defendants' claim that the absolute assignment of the mortgage to Steers was only intended as collateral security for a loan had been pleaded, no defense could have been made out. Mrs. Mulligan was in possession under a lease from the tenant by the curtesy. Upon his death, the plaintiffs, as the reversioners of the property, succeeded to all the rights of her deceased landlord, the tenant, by the curtesy, as "if the reversion had remained in him." Mrs. Mulligan is estopped, not only from disputing her deceased landlord's title during his lifetime, but also from disputing that title after it had reverted to the plaintiffs as his successors in interest. Moreover, Mrs. Mulligan was never in possession of the mortgaged premises as mortgagee, or with the consent of the plaintiffs, who owned the property. (*Doe* v. *Whitroe*, D. & R. 1; *Howell* v. *Leavitt*, 95 N. Y. 617; *Gross* v. *Welwood*, 90 N. Y. 638; *Bennett* v. *Austin*, 81 N. Y. 316; *Constant* v. *Barrett*, 13 Misc. Rep. 249; *Russell* v. *Ely*, 2 Black, 575; *Ten Eyck* v. *Craig*, 62 N. Y. 406; *Trimm* v. *Marsh*, 54 N. Y. 599.) The court did not err in excluding evidence tending to show that after the death of the tenant by the curtesy, Mrs. Mulligan told one of the plaintiffs about her intention to occupy the property. (*Walker* v. *Dunspaugh*, 20 N. Y. 170; *Terry* v. *Chandler*, 16 N. Y. 354; *Clark* v. *Baird*, 9 N. Y. 183; *Matter of Myer*, 184 N. Y. 54; *Matter of Kennedy*, 167 N. Y. 164; *Naul* v.

*Naul,* 75 App. Div. 292; *Dan* v. *Brown,* 4 Cow. 483; *Matter of Baird,* 47 Hun, 77.) The court expressly left to the jury "the question * * * whether George Barson is dead or alive." (*Karstens* v. *Karstens,* 29 App. Div. 229; *Matter of Sullivan,* 51 Hun, 378; *Cambrelleng* v. *Purton,* 125 N. Y. 610; *Ferry* v. *Sampson,* 112 N. Y. 415; Lawson on Presump. Ev. [2d ed.] 248; 1 Greenl. on Ev. [16th ed.] § 41; *Mitchell* v. *Thorne,* 134 N. Y. 536.) The court properly doubled the damages. (Code Civ. Pro. §§ 1496, 1497, 1525; *Cluson* v. *Baldwin,* 129 N. Y. 184; L. 1896, ch. 547, § 200.)

Werner, J. This is an action in ejectment. It has had a long and varied history, in the course of which many questions have arisen, some of which are not germane to the present appeal. The principal question now before us is whether the defendant Agnes Mulligan, whom we shall call the appellant, was a mortgagee in possession when this action was instituted. The material facts which bear upon this question are briefly as follows: In 1853 Selena Barson purchased a plot of land, which embraces the premises in dispute, situate in the county of Westchester, now within the limits of the borough of the Bronx, in the city of New York. A purchase-money mortgage for $1,000 was then given to the grantor, payable in one year from date. The grantee went into possession, which she retained until her death in November, 1862. She left her surviving a husband and several children. As she died intestate, the fee passed to her children, subject to the husband's tenancy by the curtesy. The husband went into possession, and at a time not specifically pointed out in the record, executed to the appellant a lease of the premises, which seems to have expired on or about January 1st, 1895. On the 26th day of March, 1894, a new lease was entered into between the tenant by the curtesy and the appellant, which was to run for five years and four months from January 1st, 1895. This lease was cut short by the death of the lessor on the 2nd of October, 1897. If these were all the facts which comprise the history of the case

preceding the death of the tenant by the curtesy, there could, of course, be no question as to the rights of the respective parties to this action. In that event the possessory right of the appellant as the lessee of the tenant by the curtesy would have been so clearly extinguished by the death of the latter as to leave no question open for discussion. There are other facts, however, upon which the appellant now contends that at the death of the tenant by the curtesy, or at least when this action was commenced, she was a mortgagee in possession, and entitled to remain upon the premises until her mortgage is paid. It appears that the purchase-money mortgage made by Selena Barson in 1853 passed through various hands until, in June, 1888, the appellant acquired title thereto by assignment. She held it for eight days and then, on July 6th, 1888, assigned it to one Steers, who was the holder thereof in October, 1894, when the appellant took from the tenant by the curtesy the second lease above referred to. Steers continued to hold the mortgage until October 6th, 1897, when it was re-assigned to the appellant. On October 2nd, 1897, or four days before this re-assignment, the tenant by the curtesy died and thus, by that event, the lease from him to the appellant was terminated as above stated. Since the appellant concededly entered into the occupation of the disputed premises under a lease which expired with the life of the tenant by the curtesy, it becomes pertinent to inquire by what means and at what time the appellant claims to have become a mortgagee in possession. Her answer to the complaint and her testimony clearly show that she entered into possession of the premises under the lease, and that there never was any change in the character of her possession unless Steers' re-assignment to her of the mortgage, after the death of the tenant by the curtesy, metamorphosed her tenancy under the lease into a possession under the mortgage. The answer of the defendants does set forth the appellant's ownership of the mortgage, but it asserts no right of possession of the premises covered by it, except "as mortgagee under and by virtue of the instruments aforesaid," and

one of the instruments, thus referred to in the plural, is the lease set forth in the complaint and admitted in the answer. The appellant's testimony is no more explicit. It discloses no assertion of a right to possession as mortgagee, unless that is to be inferred from the admitted fact that the mortgage was re-assigned to her four days after her tenancy expired. It is true that the appellant sought to prove that the assignment to Steers of the mortgage was not absolute, as upon its face it purported to be, but was intended as collateral security for a loan, and that the evidence was excluded because that question was thought not to be within the issues raised by the pleadings. The exceptions to the rulings of the trial court in this behalf are urged upon this appeal as one of the grounds for reversing the judgment, but in our view of the case that proof, in and of itself, was not relevant to the question whether, upon the foregoing facts, the appellant was a mortgagee in in possession. Even if it be conceded for the purposes of the argument that the appellant merely assigned the mortgage to Steers as collateral security for a debt, the issue is still squarely presented whether a mortgagee who takes possession of the mortgaged premises as tenant under a lease from a life tenant can become a mortgagee in possession without the consent of the mortgagor. It cannot be denied that there is some confusion in the earlier reported cases in this state relating to the general subject of mortgagees in possession. This confusion has arisen in part from *obiter dicta* in cases where the question was not involved, and in part from broad judicial statements and still broader reporters' head notes, in cases where it was either assumed or proved that the mortgagee was rightfully in possession under his mortgage, but principally from the fact that for some time after the common law was changed by the Revised Statutes, the old rule continued to find inadvertent expression in some judicial opinions.

At common law the mortgagee was at first treated as being the legal owner. His estate was devisable and descended to his heirs. After breach of the condition he could oust the mortgagor by an action in ejectment, or by any other means

that did not involve a breach of the peace. In equity, however the rights of the mortgagee passed to his personal representatives and the mortgagor was regarded as the real owner of the land. These conflicting views were carried so far that even after the courts of law had recognized the title of the mortgagee as absolute, and had put him in possession, the courts of equity enforced what they called the mortgagor's equitable right of redemption. These contradictory decisions gave rise to much confusion. The judges who had been trained in the rigorous school of the common law regarded the equitable rule as an offensive innovation. But the common-law rule was so harsh and, in many cases, so extremely unjust, that the equitable rule grew in favor and was vigorously invoked. In course of time even the courts of law came to recognize the right of the mortgagor to redeem after forfeiture. Despite this gradual and partial evolution, the mortgagee was still regarded as in some respects the legal owner of the mortgaged premises. He could maintain ejectment and assert other legal remedies subject only to the mortgagor's right of redemption. It was finally appreciated, however, that the so-called ownership of the mortgagee was the merest fiction, because the only strict legal right he had left was to collect the debt secured by the mortgage. The mortgagee's estate had been whittled down until it disappeared altogether and there was left him nothing more than a lien under his mortgage. Under these circumstances it was, of course, absurd and unjust to permit such a creditor, for that is all that the mortgagee was, to take possession of his debtor's property without the latter's consent, or without first enforcing his rights under his lien. When the estate in fee was regarded as belonging to the mortgagee, the right of possession naturally followed ownership ; but when title was held to remain in the mortgagor until divested by sale under foreclosure, the possessory right of the mortgagee became a legal anomaly that could not survive.

This was the situation when the legislature in 1830 enacted that, " No action of ejectment shall hereafter be maintained

by a mortgagee, or his assigns or representatives, for the recovery of the possession of the mortgaged premises." (2 R. S. 312, § 57.) Since that time this has been the law of this state, the identical language of the statute having been adopted into our Code of Civil Procedure. (Sec. 1498.) The only logical theory upon which this change in the law can be justified is that the mortgagee, having come to be regarded as a mere lienor, had no legal estate in the land covered by his mortgage, and that is the view which has been accepted by our courts. (*Runyan* v. *Mersereau*, 11 Johns. 537; *Jackson* v. *Crafts*, 18 id. 110; *Jackson* v. *Bronson*, 19 id. 325; *Kortright* v. *Cady*, 21 N. Y. 343; *Stoddard* v. *Hart*, 23 N. Y. 560.) If we carry the logic of the argument a step further it would seem to follow that when the legislature deprived the mortgagee of the only legal method by which he could get possession of the mortgaged premises without the mortgagee's consent, prior to foreclosure, there was no way left by which the mortgagee could acquire such possession except by the mortgagor's consent. Unless this is so, we must impute to the legislature the vain formality of enacting a statute which can be rendered nugatory by the voluntary act of the very person whose conduct the statute was designed to control. Although the proposition that the legislature meant exactly what the statute plainly expresses seems to have received the almost universal assent of the profession, there are certain early opinions in which the statute seems to have been judicially amended, as we are asked in effect to amend it in the case at bar, by holding that although a mortgagee may not enter before foreclosure without the mortgagor's consent, yet, if he does so enter, he may remain until the debt secured by his mortgage is paid. This is too metaphysical for practical ends and I frankly confess my inability to grasp the idea. I can see no escape from the conclusion that the legislative abrogation of the mortgagee's right to enter by ejectment was the exact equivalent of a command that he should not enter at all except with the mortgagor's consent. And if this is the result accom-

plished by the provision of the Revised Statutes above quoted, then it is plain that the mortgagee has no means of getting possession that a stranger has not. He has no more right to enter by stealth, trick or device than a stranger would have. If this is not true then it seems to me the right of possession is not to be determined by legal principles, but by mere fleetness of foot. In that event all that a mortgagee need do is to wait for the opportune moment when premises are vacant long enought to permit him to hurry in without force, and from that instant his possession becomes as legal as though he had acquired it previous to the enactment of the statute after months or years of litigation in ejectment. All that has been said of the rights of the mortgagees must apply to their assignees, for, obviously, the assignee of a mortgage can occupy no better position than the mortgagee himself. If he could, the legal restraints imposed upon a mortgagee could in every case be easily removed. Thus far the discussion has proceeded upon broad principles which apply, or at least should be applicable, to all cases involving the question of a mortgagee's right to possession of the mortgaged premises.

Let us now consider the concrete question presented by the facts in the case at bar. Can a person who enters as tenant acquire the position of a mortgagee in possession without the owner's consent? The appellant entered under a lease which expired at her lessor's death. If she had never owned the mortgage which gives rise to this controversy, her covenant under the lease to surrender the land at the expiration of the lease would at once have become operative and could have been enforced in summary proceedings for her removal. How does the fact that she held a mortgage, assuming that she had held it continuously to the instant of her lessor's death, change the situation? Her occupation as tenant gave her no rights as mortgagee. She could not hold the premises in both capacities, and there is nothing in the pleadings or the proof to indicate that she ever abdicated her position as tenant to assume the attitude of a mortgagee in possession.

The evidence is quite to the contrary, for it plainly appears that from the inception of the lease to the hour of her lessor's death she occupied the premises as a tenant and nothing more. The expiration of the lease ended the appellant's right to possession of the premises. From thenceforth her occupancy was merely by sufferance. She was under a legal obligation to vacate the premises. Could she, in these circumstances, constitute herself a mortgagee in possession without the consent of the owner? I think not. She could not do this even if she then had possession of the mortgage, for her entry and occupation had taken place under a lease which precluded her from asserting a claim inconsistent with her tenancy. But the fact is that when her lease expired the appellant did not have possession of the mortgage. Steers then held it by assignment, and it is of no moment whether the assignment to him was absolute or merely to secure a debt. The important fact is that Steers, who at that time stood in the shoes of the mortgagee, was not in possession of the premises. It is difficult to understand how the appellant could occupy a more favorable position than Steers would have occupied if he had continued to own the mortgage. Proceeding now to the time, four days after the expiration of the appellant's lease, when she regained full possession of the mortgage by taking an assignment from Steers, the question naturally arises whether anything then transpired to change the relations of the parties. In that regard the record discloses nothing beyond the bare assignment of the mortgage from Steers to the appellant. The latter was then a tenant holding over after the expiration of her term. She asserted no right of possession under the mortgage. If it was her purpose to assume that relation she should have disclosed it. Her silence was equivalent to an admission that she regarded herself as maintaining the character in which she entered and occupied the premises to the time of her lessor's death. This result must follow, it seems to me, unless we are prepared to go to the full length of holding that a mortgagee who enters without right cannot be disturbed in his wrongful possession.

To attempt an exhaustive analysis of the many decisions in this state upon the subject of mortgagees in possession, or even of the cases cited for the appellant, would extend this discussion beyond reasonable limits. Even to refer to them all without elucidating the precise facts and questions involved and decided would be unprofitable. I must, therefore, content myself with a few general observations upon the leading cases which, although far from satisfactory, will serve to show that while the courts in the earlier decisions indulged in some confusing dicta, and the reporters edited into head notes some unauthorized conclusions, there has been in the main a constant and growing adherence to the rule that, since the enactment of the statute depriving a mortgagee of his former right to an action in ejectment, he can only obtain possession by consent of the mortgagor or by foreclosure of his mortgage. The case of *Van Duyne* v. *Thayre* (14 Wend. 233) is one of the most generally cited authorities for the broad proposition that a mortgagee who obtains possession of the mortgaged premises after forfeiture may defend his possession in ejectment until his mortgage is paid. The head note is quite as comprehensive as the foregoing statement. But the opinion of Mr. Justice NELSON very carefully limits the rule to a possession obtained, " either by consent of the mortgagor, or by legal proceedings." The case of *Phyfe* v. *Riley* (15 Wend. 248) is another much quoted authority, but there the opinion of Chief Justice SAVAGE and the head note specifically state that " a mortgagee in possession of mortgaged premises, lawfully acquired after condition broken, cannot be dispossessed in an action of ejectment." In *Hubbell* v. *Sibley* (50 N. Y. 469) the action was for an accounting to ascertain the amount due on certain mortgages, in which the validity of a deed in foreclosure was the underlying question. Judge GROVER stated that since the enactment of the statute " a mortgagee in possession can defend his possession in ejectment brought by the mortgagor." This was not only *obiter*, but it is true as far as it goes. In *Winslow* v. *McCall* (32 Barb. 241), which was an action upon covenants of warranty and quiet

enjoyment, the case turned upon the regularity of proceedings to foreclose a mortgage by advertisement. One Cornwall was in possession under a deed and also held a junior mortgage which was not cut off by the foreclosure. Referring to this junior mortgage the court said that when it became due " Cornwall was in possession — a possession legally acquired and of which he had never been legally divested." This statement requires no comment. If the mortgagee's possession was legally acquired he could, of course, defend it until his debt was paid. In *Bolton* v. *Brewster* (32 Barb. 389) the plaintiffs claimed as heirs at law. The defendant was the tenant of one who claimed, in the first instance, under an executor's deed, the validity of which was challenged for lack of jurisdiction in the Surrogate's Court in proceedings for the probate of a will. But the defendant's landlord also held a mortgage which, to use the language of the court, was " a subsisting lien upon the lands claimed, and is held for the purpose of assuring and protecting the title." In that case, as in other early cases, it seems to have been assumed that the mortgagee was lawfully in possession without stating the facts upon which the conclusion was founded. The case of *Hubbell* v. *Moulson* (53 N. Y. 226) may be passed without discussion. Although that was an action of ejectment by a mortgagor against one who stood in the shoes of the mortgagee, neither court nor counsel questioned the regularity of possession, and it seems to have been conceded that by privity his possession had devolved upon the defendants. In *Townshend* v. *Thomson* (139 N. Y. 152) the facts are too long and complicated for extended repetition. It is sufficient to say that the action was in ejectment. The plaintiff claimed under a deed from one Law who acquired title from an assignee in bankruptcy, who sold under the order of the court. The lands conveyed were subject to a mortgage which was subsequently foreclosed without making the assignee in bankruptcy a party to the action. Still later the mortgage was sought to be foreclosed against him but ineffectually, because he was not made a party in his representative capacity. At

the sale under the first foreclosure, Price, the mortgagee, pur-
chased the property and went into possession, which was
undisturbed for nine years. Twelve years after the sale under
the first foreclosure, the mortgagee's administrator instituted
the second foreclosure, which was also defective for the rea-
sons above stated, and at the sale the premises were purchased
by one of the heirs of the mortgagee. Through mesne con-
veyances from her the premises came into possession of one
Thomson, whose widow and children were the defendants in
the action of ejectment. It was held that "a purchaser at a
foreclosure sale, defective and void as against the owner of
the equity of redemption, because he was not made a party to
the foreclosure action, becomes assignee of the mortgage, and
if he lawfully enters into possession of the real estate purchased
he becomes a mortgagee in possession." (Citing *Robinson* v.
*Ryan*, 25 N. Y. 320; *Winslow* v. *Clark*, 47 id. 261; *Miner*
v. *Beekman*, 50 id. 337.) This is undoubtedly the law and
it was correctly applied, for the entry of Price, the mortgagee
and purchaser, was under color of right, and was acquiesced
in for many years by the assignee in bankruptcy of the owner
of the equity of redemption. In *Madison Ave. Bap. Ch.* v.
*Oliver St. Bap. Ch.* (73 N. Y. 82), also an action in eject-
ment, it appeared that the plaintiff and defendant, both
religious corporations of the same denomination, had arranged
to unite their forces. The defendant was to take the name of
the plaintiff, its property and assets, and assume its indebted-
ness. The consolidation was in form effected, but was later
attacked because of the failure to observe certain statutory
requirements which were essential to the validity of the trans-
fer. During the period in which all concerned had acqui-
esced in the arrangement, the defendant went into possession
of the plaintiff's real estate, with the consent of the latter, and
upon the express agreement that the defendant should assume
certain mortgages and pay the other indebtedness of the
plaintiff. The defendant took assignments of these mort-
gages and paid other debts of the plaintiff. Upon these facts
the defendant was held to be a mortgagee lawfully in posses-

sion and entitled to hold the premises until its debt was paid. In that case, as in *Townshend* v. *Thomson* (*supra*), the element of the mortgagor's consent seems to have been regarded as the controlling factor. If the foregoing decisions have been correctly analyzed it is obvious that, notwithstanding misleading dicta and inaccurate syllabi, the cases have quite consistently held to the rule that the mortgagee's entry must be lawful to enable him to defend against the mortgagor's action of ejectment, and the last two cases cited (139 and 73 N. Y.), as well as *Howell* v. *Leavitt* (95 N. Y. 617) are plainly authorities for the proposition that such entry cannot be lawful, prior to foreclosure, without the mortgagor's consent. This consent need not be express, but may arise by implication from circumstances, was decided in *Gross* v. *Welwood* (90 N. Y. 638), where it was held to be a question of fact for the jury.

It still remains to be decided, however, whether the entry of the mortgagee, with the consent of the mortgagor, must be directly under the mortgage or whether any entry with the consent of the mortgagor will suffice to constitute the possession which enables a mortgagee to successfully defend in an action of ejectment brought by the mortgagor or owner. This question is not free from difficulty, and if it were wholly one of first impression I should incline to the view that the mortgagor's consent must relate to an entry directly under the mortgage. But I admit that this is narrow ground which would necessarily exclude many cases that most forcibly appeal to a legal tribunal having jurisdiction of cases in which equitable defenses may be interposed. It is to be noted, moreover, that this court seems to be committed to the doctrine that the mortgagee's possession "need not be given under the mortgage, nor with a view thereto." *Mad. Ave. Bap. Ch.* v. *Oliver St. Bap. Ch.* (*supra*) and *Howell* v. *Leavitt* (*supra*) point in the same direction. In what cases then may it properly be held that a mortgagee who enters the mortgaged premises with the consent of the mortgagor is to be regarded as a mortgagee in possession? That is very clearly a question which cannot be answered categorically,

21

for any departure from the restricted rule that the mort-
gagee's entry must be under or by virtue of the mortgage
leads us into the broad domain of equities which are as mani-
fold as human motives and actions.  There is, however, a
conservative area within which, it seems to me, the questions
arising upon this troublesome subject may be safely confined.
Whenever it appears that the mortgagor has consented,
either expressly or impliedly, by contract or conduct, to the
entry of the mortgagee, for purposes, or under circumstances,
not inconsistent with their relative legal rights under the
mortgage, the possession of the mortgagee may properly be
regarded as lawful.  So, on the other hand, when the entry
of the mortgagee is effected by the consent of the mort-
gagor under a relation that is hostile to, or inconsistent
with, the legal rights of the parties under the mortgage,
then the mortgagee's possession must stand or fall without
reference to his mortgage.  The case at bar is a concrete
example of the latter proposition.  The appellant entered
with the consent of the mortgagor, but under a lease in
which she covenanted to surrender the premises at the end
of her term.  She entered as tenant and not as mortgagee.
When her lease expired she had no greater right to remain
upon the premises than a stranger would have had.  Stand-
ing in that relation to the owners, she could not hold posses-
sion against them under the mortgage without their consent
given as representatives of the mortgagor.  Having entered and
occupied as lessee, the appellant could not hold over as mortga-
gee, any more than she could acquire lawful possession by force
or fraud against the will or consent of the owners.  (*Howell*
v. *Leavitt*, 95 N. Y. 617.)  During, or after the expiration of
her term as lessee, she could not, without the express or implied
consent of the owners, assert a right of possession as mortgagee,
any more than she could have obtained lawful possession as
mortgagee under an arrangement with any other tenant of
the owners.  (*Russell* v. *Ely*, 2 Black [U. S.], 579.)

It is urged, however, that the appellant could have shown
that she was in fact permitted to remain in possession under

her mortgage after the expiration of her lease, had she been allowed to give evidence of a conversation between herself and one of the plaintiffs. The record discloses that when the appellant was a witness she was asked if, subsequent to the death of the tenant by the curtesy, she had a conversation with one of the respondents. She answered in the affirmative, stating that her conversation was with Charles H. Barson, who is one of the reversioners. She was then asked to state the conversation and it was objected to by plaintiff's counsel ",as not within the issues raised by these pleadings." The objection was sustained and counsel for the appellant excepted. The appellant was then asked to state whether Charles H. Barson had said anything to her with reference to her remaining in possession of the premises *under her mortgage.* This was objected to on the same ground, the objection was sustained and appellant's counsel excepted. It is clear that the rulings cannot be sustained on the ground suggested by the objections. The inquiry was within the issues raised by the pleadings, for the complaint alleges that the defendants are wrongfully in possession without leave of the plaintiffs and without legal right, and the answer denies the allegation. It needs no argument to show that this evidence would have been clearly competent and material if Charles H. Barson, with whom the appellant claims to have had the conversation, were the sole owner of the premises in dispute. The fact is, however, that he is only one of several tenants in common. It was clearly beyond his power to bind his co-tenant by any unauthorized act or omission of his own. (*Dan* v. *Brown,* 4 Cow. 483 ; *St. Paul's Ch.* v. *Ford,* 34 Barb. 16 ; *Jackson* v. *Moore,* 6 Cow. 706 ; *Matter of Kennedy,* 167 N. Y. 163.) But, although he could not affect the interest of his co-tenant, he had the right to bind himself and his own interest. The same legal principle that gives to one of several tenants in common the right to maintain an action for the recovery of his undivided share in real property confers upon him the power to alienate the same, or to subject it to any lien, incumbrance or burden which is not *per se* unlawful

or inconsistent with the rights of his co-tenants. (Code Civ. Pro. § 1500.) As the proposed evidence was excluded, we do not know what would have been established by it, but the question under which it was sought to be elicited was broad enough to cover a transaction in which Charles H. Barson might have bound or affected his own right to possession. There is still another ground upon which this evidence would have been admissible, if relevant under the pleadings, and that I shall refer to a little further on. In this view of the matter the exclusion of the evidence of the conversation between the appellant and the plaintiff Charles H. Barson was substantial error which necessitates a reversal of this judgment. We might close the discussion at this point, but there are two other questions which should be disposed of for the guidance of the court upon another trial.

It is also urged for the appellant that the plaintiffs cannot recover because they failed to establish title to an undivided one-third of the premises in dispute. In that behalf it appears that Selena Barson left her surviving three children. They were William G., Charles H. and George. The latter was born in 1848 and disappeared in 1869, when he was about twenty-one years of age. He was unmarried at that time, and nothing was ever heard of him afterwards, although search and inquiry were made. At the time of the trial thirty-seven years had elapsed since his disappearance. These circumstances were sufficient to raise the legal presumption that he was dead after the lapse of seven years from the time of his disappearance. (Lawson's Presumptive Ev. p. 250; Abb. Tr. Ev. 98.) The question whether he was dead or alive was submitted to the jury, and their general verdict for the plaintiffs settled that issue in their favor. The death being thus established carried with it the presumption of intestacy. (*Mitchell* v. *Thorne*, 134 N. Y. 541; *Ferry* v. *Sampson*, 112 id. 415.) George Barson was unmarried when he disappeared. For thirty-seven years neither he nor any one purporting to be his issue has made any claim to an interest in the premises in dispute. This, I think, is sufficient to require a court or

jury to indulge in the presumption of death without issue. (*M' Comb* v. *Wright*, 5 Johns. Ch. 264; *Ferry* v. *Sampson, supra*.) It is said that this question should have been submitted to the jury, and not have been left to rest upon a presumption. It is enough, perhaps, to say that counsel for the appellants made no request to submit that question to the jury. But what would have been the situation if such a request had been made? The plaintiffs had an unquestioned title to two-thirds of the estate and that gave them an immediate right to entry unless the appellant was a mortgagee in possession of the whole or some part. If she was not in as mortgagee, she had no legal right to keep the plaintiffs out of possession simply because there might be a doubt whether the plaintiffs had a perfect title to only two-thirds of the estate or to the whole of it. That is a question in which she had no interest. If she was a mortgagee in possession her right would not be affected by it. If she was not a mortgagee in possession she had no right to hold the premises, even though there might be some uncertainty as to the extent of the title of the plaintiffs. Their title, such as it was, gave them the immediate right of possession unless the appellant was holding as mortgagee. As was stated by Judge GRAY in *Deering* v. *Reilly* (167 N. Y. 190), "The rule that a plaintiff in ejectment must recover upon the strength of his own title and not on the weakness of his adversary's, has its proper application where title is asserted against title; but not to a case where the defendants, making no claim of title, object that the plaintiff has not proved a perfect title against those who might claim adversely."

Still another question remains to be considered, and that is whether the trial court, upon the application of the plaintiffs, was authorized to double the damages proved at the trial. Plaintiffs assert their right to double damages under section 200 of the Real Property Law, and the appellant challenges this asserted right upon the authority of the sections of the Code of Civil Procedure (§ 1496 *et seq.*), which provide that the damages recoverable in an action of ejectment "include the rents and profits or the value of the use and

occupation of the property, where either can legally be recovered " (§ 1497), and that where a plaintiff in an action of ejectment recovers judgment for the property, or the possession of the property, he "is entitled to recover, as damages, the rents and profits, or the value of the use and occupation of the real property recovered, for a term not exceeding six years." (§ 1531.) The language of section 200 of the Real Property Law, under which the plaintiffs claim the right to double damages, is as follows: "Where, on the termination of an estate for life, or for years, the person entitled to the possession demands the same, and serves, in the same manner as for the termination of a tenancy at will, a written notice to quit, if the tenant, or any person in possession under him, or by collusion with him, wilfully holds over, after the expiration of thirty days from such service, he must pay to the person so kept out of possession, or his representatives, at the rate of double the yearly value of the property detained, for the time while he so detains the same, together with all damages incurred by the person so kept out by reason of such detention. There is no equitable defense or relief against a demand accrued, or a recovery had, under this section."

If this latter statute were new the remedy therein specified might be regarded as a partial substitute for the remedies given by the Revised Statutes and the Code of Civil Procedure in actions of ejectment. The statute is not new, however, but very old. It was first adopted in England (4 Geo. II, chap. 28) and was borrowed by us in 1774. It was re-enacted here in 1788 in the first general revision of English statutes extended to New York. Later it passed through several revisions until it was adopted into the Revised Statutes and from thence it passed into the present Real Property Law. Thus we see that it has come down to us, side by side with the Revised Statutes relating to the recovery of real property which are now a part of our Code of Civil Procedure. Under the Revised Statutes a plaintiff recovering judgment in ejectment was entitled to recover damages for rents and profits. Under the first code, or Code of Procedure, the measure of

damages remained unchanged, but the practice was simplified by requiring the plaintiff to set forth in his complaint his demand for damages, instead of leaving that to be tried as a separate issue as was the custom under the Revised Statutes. (*Holmes* v. *Davis*, 19 N. Y. 488; *Vandevoort* v. *Gould*, 36 N. Y. 646.) Under the present Code of Civil Procedure a plaintiff in ejectment may demand damages for withholding the property (§ 1496), and those damages include the rents and profits or the value of the use and occupation of the property, where either may be recovered. (§ 1497.) By section 1531 the recovery of such damages is limited to six years, and must be exclusive of the value of the use of any improvements made by a defendant or those claiming under him. These Code provisions clearly prescribe the rule of damages which may ordinarily be recovered in actions of ejectment. There is nothing in them to indicate that they were designed to exclude, in a proper case, the remedy provided by section 200 of the Real Property Law. This latter statute can only be invoked however, upon the termination of a tenancy for life or years when a proper notice has been served and the tenant, or any person in collusion with him, willfully holds over after the expiration of thirty days from the service of the notice. When all these facts exist a special case is presented in which the damages ordinarily recoverable may be doubled. The provisions of section 484 of the Code of Civil Procedure, which define what causes of action may be joined in the same complaint, are broad enough to cover such a case, for subdivision 5 of that section expressly authorizes a complaint which demands the recovery of real property in ejectment, with or without damages for withholding the same. But the question remains, whether the pleading and proof of the plaintiffs are ample and definite enough to sustain the judgment for double damages.

The complaint alleges a demand for the possession of the premises, the service of a one month's notice in writing, and that the defendants unlawfully withhold possession from the plaintiffs, and asks for double damages. It does not allege the holding over of the defendants is willful. It seems to

me that such an allegation is essential to a good cause of action under section 200 of the Real Property Law, and that it must be supported by proof which, under proper instruc-tions from the trial court, will enable a jury to pass upon the question whether the holding over was willful or not. Upon this feature of the case the evidence of the conversation between the appellant and the plaintiff, Charles H. Barson, was also competent, as well as for the reason already dis-cussed. ʻEvery holding over without legal right is wrongful and unlawful in such sense as to entitle a plaintiff in ejectment to the damages which may be proved and recovered under the general rules set forth in the Code sections adverted to. These are the ordinary damages for which provision has been made by those sections. But I think that section 200 of the Real Property Law can be invoked only where the holding over is more than merely wrongful or unlawful in the sense that it is not justified by legal right. Under the latter section it must be shown to be deliberate, intentional, obstinate, unrea-sonable or perverse to justify a claim for double damages. Unless we take this view of the statute, there is no reason for its existence. In respect to the procedure to be pursued in doubling the damages under this statute, I can see no objec-tion to following the practice approved under sections 1667, 1668 and 1669 of the Code of Civil Procedure. In cases where a party is entitled to recover treble damages for the girdling or destruction of trees, etc., it has been held that it is for the jury to fix the single damages and then the court trebles them. These suggestions as to the practice upon the question of doubling damages may be superfluous upon this appeal. The complaint in its present form is insufficient to justify a recovery of double damages. It has been thought best, however, to consider every question which may contribute to the speedy termination of this much litigated case.

The judgment should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., GRAY, HAIGHT, VANN, WILLARD BARTLETT and CHASE, JJ., concur.

Judgment reversed, etc.