(66 Misc. Rep. 111.)

## In re CARR.

(Surrogate's Court, Saratoga County.   January 11, 1910.)

**1. TRUSTS (§ 324\*)—ACCOUNTING—OBJECTIONS—ESTOPPEL.**

A beneficiary in a testamentary trust, who agreed with the executor and trustee and the other beneficiaries under the will that investments might be made in real estate without the state, and that certain bank stock might be held until a designated time, is estopped from objecting to the account of the executor and trustee showing the investment in mortgages on. real estate without the state and the holding of the bank stock prior to the designated date, though the agreement between the parties contained a stipulation that the beneficiary in the testamentary trust would not call for an accounting if statements were rendered her, and though such statements were not rendered.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 482; Dec. Dig. § 324.\*]

**2. TRUSTS (§ 325\*)—ACCOUNTING—EVIDENCE—INTEREST.**

In the absence of evidence as to when an executor, acting as trustee under the will, received cash or of any neglect to reasonably invest it, the executor is not chargeable with interest thereon.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 483–485; Dec. Dig. § 325.\*]

**3. TRUSTS (§ 161\*)—TRUSTEES—SECURITY—STATUTES.**

Under Code Civ. Proc. § 2815, authorizing one interested in the execution of a trust to present to the court a petition averring any fact affecting a testamentary trustee, the existence of which, if interposed as an objection to granting letters testamentary to a person named as executor, would make it necessary for him to give security to entitle him to letters, and praying for a decree directing the trustee to give security, etc., and section 2638, providing that a person named as executor against whom there is an objection of nonresidence may entitle himself to letters by giving bond, etc., a testamentary trustee may be required to give security in a case where an executor could not be removed for failure to give it.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 209–211; Dec. Dig. § 161.\*]

**4. TRUSTS (§ 161\*)—TRUSTEES—SECURITY—STATUTES.**

Where the property of an estate is in the hands of the executor as such, and he has no possession of the share bequeathed to him as trustee, and he cannot hold such share as trustee until the death of a life tenant, he should not be required to give security as trustee until the trust fund comes to his hands as trustee, and when a decree is made settling his account as executor and directing payment of the legacies a petition may be made requiring him to give security.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 209–211; Dec. Dig. § 161.\*]

In the matter of the intermediate account of Clarence G. Carr, as executor of and trustee under the will of John T. Carr, deceased. · Petitions by Lora W. C. Lowe to compel Clarence G. Carr to render and settle his account as executor and trustee, and to compel him to give security. Petitioner's objections to the account filed overruled, and petition for security denied.

Rockwood, McKnight & McKelvey, for Lora W. C. Lowe.
Slade, Harrington & Goldsmith, for Clarence G. Carr.

—————————————————————————————————
\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

OSTRANDER, S. John T. Carr died August 25, 1889. His will was probated September 17, 1889, and letters testamentary issued to Clarence G. Carr. A decree settling his account was made September 8, 1897. February 18, 1901, Lora W. C. Lowe filed a petition to require said executor to render a further account of his proceedings as executor and trustee under said will, and on December 10, 1901, he filed such account, which was settled on that date. June 12, 1905, said executor filed his petition for a voluntary intermediate judicial settlement of his account, and therewith filed his account, to which said Lora W. C. Lowe filed objections. Pending the hearing upon this proceeding, an agreement was entered into between said Clarence G. Carr, Antoinette S. Carr, Carrie Carr, and Lora W. C. Lowe, that Clarence G. Carr pay to Lora W. C. Lowe $3,500 out of the trust fund, as an advancement to her, which, together with interest thereon at 4 per cent. per annum, should be taken from any sum thereafter due her, and that no objection would be made by any one to this payment before it fell due to her, or to its possible invalidity, and that said Lora W. C. Lowe would not ask for further advancements during life of said Antoinette S. Carr, and she assigned to said Clarence G. Carr all her interest in said trust fund as collateral for repayment of said $3,500 and interest, and, among other things, agreed:

"That she will not interfere with the future management of said estate or ask for legal accountings, provided that her rights in the same are not jeopardized in fact, and a sworn statement and accounting of the estate is made to her in the month of January of each year."

It was also agreed that said executor and trustee might continue to invest the funds of the estate when necessary in first mortgages on improved real estate in Minneapolis, Minn., and elsewhere, the same as was done by said John T. Carr in his lifetime and has been done subsequently by said Clarence G. Carr, and that he might hold for five years from date (July 20, 1905) stock of the First National Bank.

October 5, 1905, a decree was entered settling the account of the executor, showing a balance in the hands of said executor of $30,322.-99, "to be by him and the said Antoinette S. Carr, the widow, and the said Clarence G. Carr, as trustee of Lora W. C. Lowe, under the terms of the will, managed, invested, and controlled according to the terms of said will." On August 12, 1909, Lora W. C. Lowe filed her petition to compel said Clarence G. Carr to render and settle his account as executor and trustee. October 9, 1909, said Clarence G. Carr filed his account as such executor and trustee. October 12, 1909, Lora W. C. Lowe filed unverified objections to said executor's account of his proceedings as executor and trustee, etc., and claimed: (1) That the "executor" should be charged personally with three mortgages aggregating $2,400 upon property in Minnesota, unless such investments were made prior to mailing verified statement January 25, 1906, to her attorneys, for reason that investments were on property outside New York state and not legal investments under New York laws. (2) That there mortgages should be converted into cash and invested in securities under New York laws. (3) That executor should be charged market values instead of par value of First National Bank stock. (4) That the

executor should be charged with interest on $2,031.50 cash on hand and required to invest it.

October 12, 1909, Lora W. C. Lowe filed her petition, alleging herself interested in said estate, and that Clarence G. Carr is the acting executor and trustee under said will, and has been such for many years, and is not a resident of this state, but resides at Minneapolis, and has no office in this state, and that the will contains no express provision to the effect that Clarence G. Carr may act as executor and trustee without giving security, that he has $13,709.51 in personal property besides 35 shares First National Bank stock, all outside New York state, and prays that he be compelled to give security.

From the evidence it appears that Clarence G. Carr has resided in Minneapolis since 1882 and keeps the personalty there; that he rendered a sworn account or statement of the estate to Mrs. Lowe by sending same to her attorneys in January, 1906, but had not furnished any account since then because the attorneys had informed him in February, 1906, that they did not know her address, but would furnish it to him, and had never done so, and he did not know her address; that all the securities on hand were on hand at the former accounting; that of the inventory $10,000 was real estate in Saratoga Springs; that the executor owned several pieces of improved realty in Minneapolis and was personally responsible; that of the estate under the will after death of Antoinette S. Carr, his mother, executor was entitled to one-third individually, Caroline Carr to one-third, and Clarence G. Carr, as trustee for Mrs. Lowe, one-third, subject to deduction of $3,500 under the agreement. After giving a legacy of $1,500 to Carolina Carr, the will gives to Antoinette S. Carr, widow, use of all the remainder during her life in lieu of dower, and then proceeds:

"Third. I give, devise and bequeath all the rest, residue and remainder of my estate after such use as aforesaid by my said wife and at her death as follows:" One-third to Clarence G. Carr, one-third to Caroline Carr, and one-third to Clarence G. Carr, as trustee for Lora W. C. Lowe and others.

Accountant urges that by the agreement of 1905, wherein Mrs. Lowe agreed not to interfere with the future management of the estate or ask for accountings unless her rights were in fact jeopardized, she is barred from taking this proceeding. But this was upon condition that he render to her a verified statement and accounting of the estate in January of each year. This he has not done since 1906, and he assigns as a reason that he did not know her address, and that she made no demand upon him for it. He has not stood upon this contention, but has filed his account pursuant to the prayer of her petition, and it is not necessary to pass upon this contention..

The objection that the mortgages on Minneapolis property were improper investments, because on property without the state, and the objection as to the Citizens' Bank stock which is still held by the executor, are met by the agreement of 1905, in which contestant expressly agreed that such investments might be made and that such bank stock might be held until July 20, 1910. The condition for annual statements attached to the clause of the contract providing that Mrs. Lowe would not call for accountings if statements were rendered her does

not affect the other clauses of the contract (Bogardus v. N. Y. Life Insurance Co., 101 N. Y. 328–335, 4 N. E. 522), and as to the other provisions said contract stands, and the contestant is bound and estopped by it from urging these objections to the account.

As to the objection that the executor should be charged interest on the $2,031.50 cash on hand, there is no evidence as to when he came by it, nor anything showing any neglect to reasonably invest it, I think the objections to the account should be overruled.

We come then to the question whether security shall be required of Mr. Carr. He was a nonresident of the state when letters testamentary were granted to him in 1889, and no objection was made on the ground of nonresidence until this time. He appears to be financially responsible, and no disqualification is shown against him, unless it be his nonresidence. This application is not to remove the executor as contemplated by section 2685 of the Code of Civil Procedure; but, if it were, under the doctrine of Postley v. Cheyne, 4 Dem. Sur. 492, the facts would not warrant his removal under that section in default of security.

But this application is made under section 2815, Code Civ. Proc., which provides that a person interested in the execution of a trust may present to the court any fact respecting a testamentary trustee "the existence of which if it was interposed as an objection to granting letters testamentary to a person named as executor in a will would make it necessary for him to give security in order to entitle himself to letters," and praying for a decree requiring the trustee to give security, etc. Under section 2638 a person named as executor against whom there is an objection of nonresidence may entitle himself to letters by giving a bond, etc. Under these provisions a testamentary trustee may be required to give security in a case where an executor could not be removed for failure to give it.

But under the will in this case, the legatee Carr, as trustee, has no possession of the share of the estate bequeathed to him as trustee, until after the death of his mother. There has been no separation of the estate for the purpose of these legacies. It is all in the hands of Carr as executor, and there has never been any receipt of it by him as trustee, and cannot be until the death of Mrs. Carr. When a decree shall be made settling his account as executor and directing payment of the legacies, a petition may be properly made requiring him to give security for the amount to come in his hands as trustee; but, until the trust fund comes to his hands as trustee, I do not think he should be required to give security for it, in view of the burden which would be imposed upon the fund in carrying such a bond for perhaps several years before receipt of the fund by him, and in view of the fact that no disqualification or irresponsibility is shown.

The objections to the account should be overruled, and the prayer of the petition for security should be denied.

Enter decree accordingly.