CHARLES H. BARSON et al., Respondents, *v.* AGNES K. M. MULLIGAN et al., Appellants.

Real property — mortgagee in possession of mortgaged premises under lease from life tenant — effect of continuance of mortgagee's possession, after death of life tenant, with express consent of one of the two owners of the reversion and acquiescence therein by the other.

A mortgagee, who is in possession under a lease, has no right to possession as mortgagee, after the expiration of his term as lessee, and it is his duty to surrender possession upon demand, and is subject to removal if he refuses so to do; but he may show what transpired after the expiration of the lease upon the question of his right to retain the occupation of the premises.

In ejectment against defendant, a tenant who has also a mortgage on the premises, and whose original entry was under a lease from the tenant for life, whose death terminated the tenancy, defendants' evidence warranted the inference that one of the two co-tenants, the reversioners, expressly consented for himself, and assumed to consent for his co-tenant, that defendant might remain in possession until her mortgage was paid. The mortgage was not paid and defendant remained in possession. under this consent, without paying rent. no demand being made by either party, for nearly a year. *Held,* that formal surrender of possession by defendant was waived and became unnecessary if such express consent was given, which fact the jury might have found. That this was the beginning of a new possession independent of that under which her original entry was made. Even if the co-tenant making the promise was not authorized to consent for the other, the former had the right to bind himself and his own interest, and defendant had the same right to possession as the co-tenant making the promise, until the mortgage was paid, and she could not be dispossessed by action brought in the name of the co-tenants jointly. (*Barson* v. *Mulligan,* 191 N. Y. 306, followed.) *Barson* v. *Mulligan,* 133 App. Div. 44, reversed.

(Argued February 11, 1910; decided February 22, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered June 22, 1909, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Alton B. Parker* and *William G. Mulligan* for appellants. The learned trial court erred in not submitting to the jury the question whether or not the defendant held possession of the premises in question as mortgagee with the consent, either express or implied, of one or both of the owners of the equity. (*Barson* v. *Mulligan*, 191 N. Y. 306; *Gross* v. *Wellwood*, 90 N. Y. 638; *Howell* v. *Leavitt*, 95 N. Y. 617; *Gillette* v. *Stanley*, 1 Hill, 121; *McGlamory* v. *McCormick*, 99 Ga. 148; *Lynch* v. *Kirby*, 36 Mich. 238; *Skyle* v. *King*, 9 Ky. 385; *Murphy* v. *Orr*, 32 Ill. 489; *Towns* v. *Matthews*, 91 Ga. 546.)

*Henry A. Forster* and *Frederick P. Forster* for respondents. The appellant was bound to renounce possession and begin a fresh holding as mortgagee before she could assert any rights under the mortgage. (*Tilyou* v. *Reynolds*, 108 N. Y. 559; *Willis* v. *McKinnon*, 165 N. Y. 612; 35 App. Div. 135; *Bedlow* v. *N. Y. F. L. D. D. Co.*, 112 N. Y. 265; *Whiting* v. *Edmunds*, 94 N. Y. 309; *Jones* v. *Reilly*, 174 N. Y. 99; *De Lancey* v. *Ganong*, 9 N. Y. 1, 14.)

Vann, J. The facts of this case need not be repeated as they were fully stated on a former appeal, except that certain evidence is now before us the exclusion of which upon the trial then under review required us to order a new trial. (191 N. Y. 306, 323.)

It will be convenient to bear in mind that the action is in ejectment, brought by the owners of the reversion after the termination of a life estate, against Agnes K. Murphy Mul-

ligan, who claims to be a mortgagee in possession with the consent of one of the reversioners. The original entry by Mrs. Mulligan was under a lease from the tenant for life, whose death on the second of October, 1897, terminated the tenancy. Thereupon the plaintiffs, as owners of the reversion, became entitled to possession, notwithstanding the fact that Mrs. Mulligan owned a mortgage on the premises, for her occupation as tenant gave her no right to possession as mortgagee. It was her duty to surrender possession upon demand and she was subject to removal by summary proceedings if she failed to do so. While she could not dispute the title of the plaintiffs as owners of the reversion, she could prove what transpired after the death of the life tenant when they became entitled to possession. When, therefore, it appeared to us on the other appeal that Mrs. Mulligan had not been allowed to show on the trial then under review that after the expiration of her lease but while she was still in occupation, nominally at least, she had a conversation with Charles H. Barson, one of the plaintiffs, in which he consented that she should remain in possession under her mortgage until it was paid, we reversed the judgment and ordered a new trial. The ruling which excluded that evidence was the sole ground of reversal. We reviewed the case with great care and in great detail, the opinion of Judge WERNER, who wrote for all the judges, covering nearly eighteen pages of our reports. We decided every question now presented, except as to the effect of the new evidence, and while we held that Charles H. Barson could not, simply as tenant, bind his co-tenants without further authority, we also held that he could bind himself and his own right to possession and hence that the evidence excluded was competent and material. We passed expressly upon most of the questions then presented, some of which are again urged on this appeal, and every question involved which could have led to affirmance was necessarily decided expressly or impliedly, or else a new trial could not have been ordered.

Upon the last trial the evidence previously excluded was received. Mrs. Mulligan testified that on the second of

October, 1897, when the life tenant died, she left the premises and locked the door; that on the sixth of October, 1897, or four days after the death of the life tenant, she had a conversation with Charles H. Barson, one of the plaintiffs; that she showed him her mortgage and said she was ready to receive the money whenever he and his brother were ready to pay it. He replied that he had seen his brother, who said he was going to arrange for payment, but added that she must get off the premises at once. She urged him to fix a day for payment and he said he could not. She told him she should stay until the mortgage was paid and then he said, "You may stay, Mrs. Mulligan, in the little office until we pay it, for it won't be for long," and that he would let her know when they were ready to pay. The mortgage was not paid and she remained in possession under this consent without paying rent, no demand being made by either party, until nearly a year had passed and this action was about to be commenced. After she left the premises on the death of the life tenant she did not enter them again until this conversation had taken place, but she kept the key.

The defendant William G. Mulligan, who is the husband of the other defendant, testified that he was present at the conversation sworn to by his wife. His version was as follows: Referring to the mortgage in question he said, "Mrs. Mulligan said to Barson, 'I own that mortgage and you know that I own it; you know that I have had it for years and you know that your father has paid me the interest on it, but to convince you I will show you the papers which I have here now in my hand. I have the original bond and mortgage with your father's and mother's signature on the paper, and I have an assignment from Edward P. Steers to me.' Barson said to her, 'I know you own the mortgage.' 'Well,' she said, 'what are you going to do about it? Are you going to pay my mortgage? I am in possession there, and I want to know what you are going to do about that mortgage. I do not think I should move out of that place until the mortgage is paid,' and Charlie Barson, who is here in court, said to her,

' my brother Billy and I have talked this matter over. We have agreed that we will pay that mortgage, and that you may stay there until the mortgage is paid. We talked the matter over yesterday, but you won't stay there long, because we intend to pay the mortgage very quickly,' and Mrs. Mulligan said to him, ' If you fix a time when you will pay that mortgage, I will give you a satisfaction piece, and when you pay that mortgage to me I will move out of there and you can have the possession of it. You do not need to go to any trouble at all. I have another office here and I don't need that office to transact business. Now, let me know when you will pay the mortgage.' And Barson said, ' I will see my brother Billy and I will let you know,' and I said then to him, ' Do you speak for your brother Billy as well as for yourself; do you speak by his authority when you say that Mrs. Mulligan may remain in that place until you pay the mortgage ? ' And he said, ' I certainly do.' That was the end of it."

Charles H. Barson and his wife denied that Mr. Mulligan was present at the interview and testified that not only was no consent to remain given but none was spoken of. There was further evidence on either side which it is unnecessary to repeat.

At the close of all the evidence the plaintiffs moved for the direction of a verdict in their favor for the possession of the premises. The defendants asked to go to the jury upon the question whether consent was given as stated by Mr. and Mrs. Mulligan in their testimony. They claimed through their counsel that the jury might find from the evidence, the presumption from long acquiescence and all the circumstances, that Charles was authorized to speak for William and that even if he was not, as both joined in the action, both must succeed or neither. The court refused to let the defendants go to the jury on the question of consent and granted the motion of the plaintiffs, exceptions being duly taken. The case was submitted to the jury only as to the amount the plaintiffs were entitled to recover as damages. From the

judgment awarding possession to the plaintiffs with damages for withholding, the defendants appealed to the Appellate Division, where the judgment was affirmed, two of the justices dissenting.

The testimony of Mr. and Mrs. Mulligan warranted the inference that Charles H. Barson expressly consented for himself and assumed to consent for his co-tenant, that Mrs. Mulligan might remain in possession until her mortgage was paid. The co-tenant acquiesced in her remaining in possession without protest or complaint for nearly a year, although he occasionally passed by the premises when she was there. Formal surrender of possession was waived and became unnecessary when express consent was given that Mrs. Mulligan might remain until the mortgage was paid, as the jury could have found. That was the beginning of a new possession, independent of that under which her original entry was made. The law, in its regard for substance and its disregard of mere form, does not require that the tenant should go through the idle ceremony of giving up the key and forthwith taking it back, or of walking out and at once walking in again, when consent was given that she might continue in possession. Continuance in possession under the circumstances was in effect the taking of possession anew after the expiration of the lease and under the mortgage pursuant to the consent given. Even if the jury had found that Charles Barson was not authorized to consent for his brother William, as we said on the former appeal, "He had the right to bind himself and his own interest," and hence Mrs. Mulligan would have had the same right to possession that Charles had until the mortgage was paid and she could not be dispossessed by an action brought in the name of the two brothers jointly.

As shown by the record on the other appeal, the circumstances under which the evidence in question was rejected on the trial then under review are the same as those under which it was received on the trial now under review. In reversing the former judgment solely on account of that ruling, we necessarily held that the consent of one of the co-tenants that

Mrs. Mulligan, without a formal surrender of possession, might remain in possession under her mortgage until it was paid, constituted a defense to the action.   We are still of that opinion and accordingly we reverse the judgment appealed from and order a new trial, with costs to abide event.

CULLEN, Ch. J., HAIGHT, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment reversed, etc.